[Cite as *McKenzie v. Cintas Corp.*, 2013-Ohio-1310.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

JAMES SCOTT MCKENZIE,                  :

    Plaintiff-Appellant,                  :                  CASE NO.   CA2012-11-110

                            :                  O P I N I O N
  - vs -                                                    4/1/2013

                                  :

CINTAS CORPORATION, et al.,                  :

    Defendants-Appellees.                  :

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12-CV-82564

Marshall and Morrow LLC, John S. Marshall, Edward R. Forman, 111 West Rich Street, Suite 430, Columbus, Ohio 43215, for plaintiff-appellant

Keating Muething & Klekamp, PLL, Mark J. Chumley, Jennifer D. Johnson, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202, for defendants-appellees, Cintas Corp. and Cintas Corp. Services

**PIPER, J.**

{¶ 1}   Plaintiff-appellant, James McKenzie, appeals a decision of the Warren County Court of Common Pleas granting the motion of defendant-appellee, Cintas Corporation (Cintas), to compel arbitration.[1]

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

**{¶ 2}** According to facts alleged in the complaint, McKenzie began working for Cintas as a sales representative in May 1991. He then received several promotions because of his worthy job performance and productivity. By March 2009, McKenzie had been promoted to Senior National Account Manager. As part of his compensation package, McKenzie received approximately $200,000 per year in bonuses, which was in addition to his base salary of $100,000.

**{¶ 3}** Later in 2009, Cintas' Senior National Account Manger title changed to Senior Global Manager. McKenzie had discussions with the president and vice-president of national accounts for Cintas regarding his concerns that as a Senior Global Manager he would not be eligible to earn the commissions he had previously received as Senior National Account Manager. However, the parties reached a compensation arrangement and McKenzie accepted the position of Senior Global Manager. In September 2009, McKenzie signed an incentive agreement that guaranteed 75 percent of his average annual compensation during the preceding three years, and a "mandatory three percent bonus on all contracts signed." McKenzie then continued to secure new business for Cintas.

**{¶ 4}** In October 2011, McKenzie and Cintas entered into an Employment Agreement (Agreement) wherein McKenzie agreed to continue his employment with Cintas. Within the Agreement, the employment relationship was defined, and both parties agreed that the Agreement would supersede and cancel all prior agreements between the parties concerning the same subject matter, except for any prior arrangements concerning McKenzie's compensation. The Agreement went on to state that Cintas "agrees to pay to Employee such compensation and to provide Employee with such benefits as agreed upon by the parties."

**{¶ 5}** The Agreement contained an arbitration clause, which stated that any dispute arising between the parties would be arbitrated, including "all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer." The

arbitration clause also listed several issues excluded from arbitration, including unemployment benefits, workers' compensation claims, claims for declaratory judgment or injunctive relief concerning another section within the Agreement regarding McKenzie's acknowledgments and covenants, as well as other administrative agency issues.

{¶ 6} In early 2012, the relationship between Cintas and McKenzie broke down, and McKenzie resigned. On July 27, 2012, McKenzie filed suit against Cintas, claiming breach of contract because Cintas failed to pay him the three percent bonus on his annual sales contracts as promised. Cintas then filed a motion to compel arbitration, or alternatively, a motion to stay the proceedings. The trial court granted Cintas' motion to compel arbitration, and stayed the action. McKenzie now appeals the trial court's decision, raising the following assignment of error.

{¶ 7} THE TRIAL COURT ERRED BY COMPELING [sic] ARBITRATION OF A PRIOR COMPENSATION ARRANGEMENT THAT DID NOT HAVE AN ARBITRATION PROVISION WHERE THE EMPLOYMENT AGREEMENT CONTAINING AN ARBITRATION PROVISION TWICE SPECIFICALLY EXEMPTED PRIOR COMPENSATION ARRANGEMENTS.

{¶ 8} McKenzie argues in his assignment of error that the trial court erred by compelling arbitration because his contract claim is specific to the compensation arrangement, which was executed separately from the Agreement and was therefore exempted from the arbitration clause.

{¶ 9} According to Ohio's Arbitration Act, R.C. Chapter 2711,

> A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit,

from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.[2]

R.C. 2711.01(A). R.C. 2711.02(B) provides that when a valid arbitration clause exists, a court can stay the proceedings in the trial court, and R.C. 2711.03(A) permits a court to compel arbitration.

{¶ 10} Arbitration is a favored method of dispute resolution in the law. *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 471 (1998). The strong public policy in favor of arbitration is codified in Ohio's Arbitration Act, as quoted above, which requires a court to stay an action if it involves an issue subject to an arbitration agreement. R.C. 2711.01(A); *See also ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 500 (1998). Where there are doubts regarding the application of an arbitration clause, such doubts should be construed in favor of arbitrability. *Council of Smaller Enterprises v. Gates, McDonald & Co.,* 80 Ohio St.3d 661, 666 (1998).

{¶ 11} A presumption favoring arbitration arises when the claim in dispute falls within the scope of an arbitration provision. *Union Township, Clermont County v. Union Township Professional Firefighters' Local 3412*, 142 Ohio App.3d 542 (12th Dist.2001), citing *Williams,* 83 Ohio St.3d at 471. "An arbitration clause in a contract should not be denied effect unless it can be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute." *Union Township* at 548. Interpreting the meaning and construction of contracts involves a question of law which appellate courts review de novo. *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. No. CA2006-07-021, 2007-Ohio-1655, ¶ 7. Therefore, the question of whether a particular claim is arbitrable is one of law for

---

2. Division (B) of R.C. 2711.01 applies to real estate transactions.

this court to decide. *Id.*[3]

**{¶ 12}** As previously stated, the Agreement sets forth the "employment relationship" between Cintas and McKenzie. Although the compensation arrangement guaranteeing a three percent commission already existed at the time the parties executed the Agreement, the sole purpose of the compensation arrangement was to document the compensation package McKenzie would receive. However, Cintas' agreement to pay McKenzie a three percent bonus did not otherwise govern the terms of McKenzie's general employment with Cintas. Instead, it is the Agreement that very clearly sets forth the employment terms governing the employer-employee relationship, including important terms such as the consideration given for executing the Agreement, termination rights by both parties, McKenzie's covenants, eventual return of employer property, pay deduction, applicable law, and specifically, arbitration.

**{¶ 13}** While the compensation arrangement was a wholly separate document, the Agreement expressly references and incorporates the already-promised compensation, by stating that Cintas "agrees to pay to Employee *such compensation* and to provide Employee with *such benefits* as agreed upon by the parties."[4] (Emphasis added.) When a contract incorporates a prior agreement by reference, that prior agreement is to be read as though it had been restated in the contract. *Blanchard Valley Farmers Coop., Inc. v. Rossman*, 145 Ohio App.3d 132, 140, (3rd Dist.2001). Otherwise stated, the two documents must be read together. *Christie v. GMS Mgmt. Co.*, 124 Ohio App.3d 84, 88 (9th Dist.1997).

---

3. Cintas argues that an abuse of discretion standard applies to a trial court's decision to compel arbitration and stay proceedings. While this standard has been employed by some courts, the issues presented in this appeal are matters strictly involving contract interpretation so that we will employ a de novo standard of review.

4. Moreover, the parties' intent to incorporate the compensation arrangement is stated in another contract clause regarding the "COMPLETE AGREEMENT." Within that section, the parties agreed that "aside from the amounts of employee's compensation and employee's entitlement to benefits, this agreement contains the entire agreement between employer and employee regarding subjects addressed herein * * *."

{¶ 14} It is undisputed that the Agreement did not supersede or cancel the prior compensation arrangement. Rather, the Agreement incorporated by reference the prior compensation arrangement through Cintas' promise to pay "such compensation" and to provide "such benefits" as detailed in the compensation arrangement. Once the compensation issue became a part of the Agreement, the Agreement's arbitration clause controlled. Therefore, the question becomes whether a compensation dispute is an issue subject to the Agreement's arbitration clause.

{¶ 15} "Where the arbitration clause is broad, only the most forceful evidence of a purpose to exclude the claim from arbitration will remove the dispute from consideration by the arbitrators." *Composite Concepts Co., Inc. v. Berkenhoff*, 12th Dist. No. CA2009-11-149, 2010-Ohio-2713, ¶ 26, quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir.2003).

{¶ 16} According to the Agreement's broad arbitration clause, which is entitled "EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES," any dispute or difference related to McKenzie's employment with Cintas would be arbitrated.

> Should any dispute or difference arise between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement, the parties will confer and attempt in good faith to resolve promptly such dispute or difference. * * * The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, include Employee's rights or claims for damages as well as reasonable costs and attorneys' fees, caused by Employer's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer.

{¶ 17} McKenzie brought a breach of contract suit alleging that Cintas failed to pay him his just compensation. That issue is subject to the arbitration clause for two reasons.

First, the arbitration agreement very clearly applies to disputes that arise between McKenzie and Cintas concerning any provision of the Agreement. The provision at issue is Cintas' promise to pay McKenzie "such compensation and to provide Employee with such benefits as agreed upon by the parties." Second, the arbitration agreement very clearly applies to "all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer," which would certainly include McKenzie's compensation. We would also note that the arbitration clause also listed several issues excluded from arbitration, including unemployment benefits, workers' compensation claims, claims for declaratory judgment or injunctive relieve concerning another section within the Agreement regarding McKenzie's acknowledgments and covenants, as well as other administrative agency issues. However, disputes over compensation were not included with those issues excluded from arbitability.

{¶ 18} Although the dissent focuses on the fact that the compensation arrangement was never superseded nor canceled by the Agreement, we are reminded that any doubts regarding the application of an arbitration clause should be construed in favor of arbitrability, and that an arbitration clause in a contract should not be denied effect unless it can be determined with *positive assurance* that the clause is not susceptible to an interpretation that covers the asserted dispute. Therefore, any slight reservation that may otherwise arise from the fact that the compensation arrangement pre-existed the Agreement should therefore be construed in favor of arbitrability, and we do not determine with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.

{¶ 19} As we have found that the Agreement's arbitration clause applies to McKenzie's suit, the trial court did not err in staying the proceedings and compelling arbitration. McKenzie's sole assignment of error is overruled.

{¶ 20} Judgment affirmed.

M. POWELL, J., concurs.

RINGLAND, P.J., dissents.

**RINGLAND, P.J., dissenting.**

{¶ 21} I respectfully dissent from the majority's decision. Where the language of the Agreement specifically excludes prior compensation arrangements from supersedence and cancellation, I cannot find that the arbitration clause of the Agreement applies to a dispute over compensation. It is undisputed that the prior compensation arrangement did not compel arbitration to resolve disputes as to compensation. Therefore, I would find the trial court erred by staying the proceedings and compelling arbitration.

{¶ 22} With the issue of contract interpretation, the intent of the parties is paramount. *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. A court is to examine the contract as a whole and presume that the intent of the parties is reflected within the contract language itself. *Id.* When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

{¶ 23} The plain, unambiguous language of the Agreement states as follows:

> Employer and Employee agree that this Agreement supersedes and cancels all prior agreements between them concerning the same subject matter, except for any prior arrangements concerning Employee's compensation and Employee's participation in Employer's benefit programs. Employer agrees to pay to Employee such compensation and to provide Employee with such benefits as agreed upon by the parties.

{¶ 24} I cannot find that the Agreement incorporates the prior compensation arrangement where the terms of the Agreement specifically exclude it from supersedure.

{¶ 25} The intention of the parties to exclude the prior compensation arrangement is

- 8 -

further evidenced by the section of the agreement regarding the "COMPLETE AGREEMENT" whereby the parties agreed that "aside from the amounts of employee's compensation and employee's entitlement to benefits, this agreement contains the entire agreement between employer and employee * * *." Here again the parties stated the intention to exclude the prior compensation arrangement from the current Agreement. While the majority cites this clause as evidence of the intent of the parties to incorporate the prior compensation into the Agreement, I believe it evidences the opposite.

{¶ 26} The majority notes that the provision of the Agreement mandating arbitration as the exclusive method of resolving disputes specifically excludes certain claims, but fails to specifically exclude disputes regarding compensation. I would note that the exclusions listed in that section of the Agreement are merely those types of claims that cannot be lawfully made subject to arbitration. The failure of the Agreement to specifically include prior compensation arrangements from the list of boilerplate exclusions does not make ambiguous the earlier language in the Agreement that specifically excluded any prior compensation arrangements from supersedure.

{¶ 27} In sum, every sentence after the paragraph dealing with prior compensation sets forth an agreement on every issue *except* the prior compensation agreement.

{¶ 28} In light of the foregoing, I disagree with the majority's decision finding that the prior compensation arrangement was incorporated into the Agreement, thus resulting in the application of the arbitration clause to disputes regarding compensation. Accordingly, I respectfully dissent from the majority's decision and would find that the trial court erred by staying the proceedings and compelling arbitration.