[Cite as *Tolles Career & Technical School Bd. of Edn. v. Tolles Edn. Assn.*, 2016-Ohio-7835.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| TOLLES CAREER & TECHNICAL SCHOOL BOARD OF EDUCATION, | : | CASE NO. CA2016-01-001 |
| | : | |
| Plaintiff-Appellant, | : | O P I N I O N<br>11/21/2016 |
| | : | |
| - vs - | : | |
| | : | |
| TOLLES EDUCATION ASSOCIATION, | : | |
| | : | |
| Defendant-Appellee. | : | |


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVH20150102


Bricker & Eckler LLP, Nicole M. Donovsky, Megan Savage Knox, 100 South Third Street, Columbus, Ohio 43215, for plaintiff-appellant

Cloppert, Latanick, Sauter & Washburn, Robert W. Sauter, Susan Hayest Kozlowski, Lora A. Molnar, 225 East Broad Street, Columbus, Ohio 43215, for defendant-appellee

Hunter, Carnahan, Shoub, Byard & Harshman, Michael J. Hunter, 3360 Tremont Road, Suite 230, Columbus, Ohio 43221, Amicus Curiae for SEIU, District 1199

Linda Fiely, 225 East Broad Street, Columbus, Ohio 43215, Amicus Curiae for Ohio Education Association

Ennis Britton Co., LPA, William M. Deters II, Gary T. Stedronsky, Pamela A. Leist, 121 West Ninth Street, Cincinnati, Ohio 45202, Amicus Curiae for Ohio School Boards Association, Ohio Association of School Business Officials, and Buckeye Association of School Administrators

**RINGLAND, J.**

{¶ 1} Tolles Career & Technical Center School Board of Education ("Board") appeals from a decision of the Madison County Court of Common Pleas ordering arbitration with Tolles Education Association ("Association"). For the reasons detailed below, we reverse the decision of the trial court and remand for further proceedings.

{¶ 2} This matter arises out of a dispute involving the Collective Bargaining Agreement ("CBA") negotiated between the Board and the Association, covering the periods of June 1, 2013 to June 30, 2016.

{¶ 3} On March 27, 2015, the Association submitted a grievance related to the inclusion of attendance data in its teacher evaluations. The grievance was filed on behalf of four teachers evaluated during the 2013-2014 school year and attendance data was included in their respective evaluations. The Board denied the Association's grievance.

{¶ 4} On May 1, 2015, the Board filed a complaint for declaratory judgment requesting a declaration that the determination of criteria and evidence that an evaluator uses in its teacher evaluations is reserved for management and is not subject to arbitration. The Board further requested an order that the Association withdraw its request for arbitration and cease and desist from the filing of similar grievances.

{¶ 5} On June 4, 2015, the Association filed a petition to enforce arbitration and moved to dismiss the Board's declaratory judgment action. Following a hearing, the trial court found in favor of the Association, denying the Board's declaratory judgment action and granting the Association's petition to enforce arbitration. The Board now appeals the decision of the trial court, raising two assignments of error for review. For ease of discussion, we will address the Board's assignments of error together.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-

APPELLANT BY FAILING TO RECOGNIZE THE EXPRESS LIMITATIONS AGREED BY THE PARTIES ON ARBITRABILITY.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT FAILED TO RECOGNIZE THE MANAGEMENT RIGHT AND RESPONSIBILITY OF THE PUBLIC EMPLOYER TO EVALUATE EMPLOYEES.

{¶ 10} In its first and second assignments of error, the Board argues the trial court erred by compelling arbitration because the inclusion of teacher attendance data in teacher evaluations is not an issue subject to arbitration.

{¶ 11} Whether an agreement creates a duty for parties to arbitrate is a question of law, and the standard of review on appeal is de novo. *McKenzie v. Cintas Corp.*, 12th Dist. Warren No. CA2012-11-110, 2013-Ohio-1310, ¶ 11. Arbitration is favored as a method of dispute resolution. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). The strong public policy in favor of arbitration is codified in Ohio's Arbitration Act, which permits a court to compel arbitration if an action involves an issue subject to an arbitration agreement. R.C. 2711.03(A). "This presumption in favor of arbitration is strengthened when an arbitration clause is broad in scope as 'only the most forceful evidence of a purpose to exclude the claim from arbitration will remove the dispute from consideration by the arbitrators.'" *Hepperly v. Sickles*, 12th Dist. Warren No. CA2014-12-147, 2015-Ohio-2223, ¶ 8, quoting *Composite Concepts Co., Inc. v. Berkenhoff*, 12th Dist. Warren No. CA2009-11-149, 2010-Ohio-2713, ¶ 26.

{¶ 12} Despite the strong policy in favor of arbitration, a matter that does not fall within the ambit of an arbitration agreement should not be submitted to mandatory arbitration. *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665 (1998). "[A]rbitration is a matter of contract and, in spite of the strong policy in its favor, a party

cannot be compelled to arbitrate any dispute which he has not agreed to submit [to arbitration]." *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. Clinton No. CA2006-07-021, 2007-Ohio-1655, ¶ 9.

{¶ 13} The issue in the present case is whether the inclusion of teacher attendance data in a teacher evaluation is a subject amenable to arbitration pursuant to the terms of the negotiated agreement. The trial court determined that the matter was subject to arbitration, finding the terms of the agreement did not clearly state whether the inclusion of attendance data was subject to arbitration and, noting the presumption in favor of arbitration, found in favor of the Association.

{¶ 14} R.C. 4117.08 governs subjects appropriate for collective bargaining with public employees. The relevant provisions state:

> (C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:
>
> * * *
>
> (2) Direct, supervise, evaluate, or hire employees;

{¶ 15} As can be seen, R.C. 4117.08(C)(2) clearly vests a public employer with the right to evaluate its employees absent an agreement otherwise. *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 143 (1988). The issue here is whether the Board limited its ability to evaluate its employees in the negotiated agreement.

{¶ 16} Both the Board and the Association agree that the agreement makes no provision for the inclusion of attendance percentage data in a teacher evaluation. Nevertheless, the Board argues that the inclusion of attendance data is a matter of professional judgment not subject to arbitration based on the language of the negotiated agreement.

{¶ 17}   Article IV of the agreement outlines the grievance procedure.  According to the definitions listed therein, a "'[G]rievance' shall mean a claim by an employee(s) that there has been a violation, misinterpretation, or misapplication of the language in this Contract."  The procedure for the resolution of grievances is a four step process, concluding with the submission of the grievance for arbitration.  Pursuant to Article IV, Section E, "[b]inding arbitration shall be the sole and exclusive remedy for an alleged violation of this Agreement."

{¶ 18}   The Board cites two key provisions in the agreement to support their position. In a section titled "Personnel Files," the agreement states:

> No grievance or aspect of any grievance that concerns an administrator's exercise of his/her professional judgment in matters such as evaluation and observation may be taken to Step Four.[1]  Moreover, an arbitrator is specifically prohibited from substituting his/her judgment for that of an administrator in matters of professional judgment.

Related to the more specific issue involving evaluations, the agreement states:

> The evaluation procedure established in this agreement conforms to the framework for the evaluation of teachers developed pursuant to section 3319.112 of the Ohio Revised Code.  Each completed evaluation will result in the assignment of a teacher performance rating.  The teacher effectiveness rating shall be derived from a summative evaluation where fifty (50) percent of the overall evaluation is based on student growth measures and fifty (50) percent of the overall evaluation is based on a teacher's performance rating as provided for in this agreement.
>
> * * *
>
> No later than July 1, 2013, the Tolles Board of Education shall adopt a standards-based teacher evaluation policy that conforms to the evaluation of teachers developed under Section 3319.112 of the Ohio Revised Code, and as endorsed by the Tolles Education Association.  Scheduling, timelines, evaluator training, and procedures for bargaining unit member evaluations shall align to this adopted policy and are attached to this document.

---

1. Step Four of the grievance procedure outlines the requirements for requesting the Association to submit the grievance for arbitration.

{¶ 19}   Relying on these provisions, the Board argues that the decision to include attendance data is a matter of professional judgment and, absent language barring the inclusion of such data, is permissible and within its rights.  On the other hand, the Association argues that because attendance data was not referenced in the negotiated agreement, the inclusion of such data in an evaluation is a procedural violation of the CBA.   In other words, the Association argues that the inclusion of this additional factor (i.e., teacher attendance data) violates the procedures adopted by the Board.

{¶ 20}   Based on our review of the record, we agree with the Board and find that in the absence of any agreement to the contrary, the inclusion of the teacher attendance data was a matter of professional judgment in its evaluation procedures.  We do not find that the inclusion of attendance percentage is a procedural or legal violation based on the terms of the negotiated agreement.

{¶ 21}   While the agreement and accompanying appendices provide some general guidance on the process for teacher evaluations, there is no provision in the negotiated agreement that impairs the Board's ability to consider attendance data within the context of its evaluations, which is consistent with R.C. 4117.08.  A review of the agreement reveals that the parties did not set forth a rigid set of factors that could or could not be considered in evaluating employee performance.  Instead, the evaluation procedures provided that 50 percent of the evaluation was to be based on "student growth measures" and 50 percent based on the "teacher's performance rating."  Attached as part of the addendum are seven factors for teacher performance as provided for in the "Ohio Standards for the Teaching Profession."  Those factors are:

**Standard 1:**

*Students*

Teachers understand student learning and development and

respect the diversity of the students they teach.

**Standard 2:**

*Content*

Teachers know and understand the content area for which they have instructional responsibility.

**Standard 3:**

*Assessment*

Teachers understand and use varied assessments to inform instruction, evaluate and ensure student learning.

**Standard 4:**

*Instruction*

Teachers plan and deliver effective instruction that advances the learning of each individual student.

**Standard 5:**

*Learning Environment*

Teachers create learning environments that promote high levels of learning and achievement for all students.

**Standard 6:**

*Collaboration and Communication*

Teachers collaborate and communicate with students, parents, other educators, administrators and the community to support student learning.

**Standard 7:**

*Professional Responsibility and Growth*

Teachers assume responsibility for professional growth, performance and involvement as an individual and as a member of the learning community.

{¶ 22}   Having reviewed the negotiated agreement and accompanying documents, we agree that the Board has the right to evaluate its employees and consider what factors may

- 7 -

be considered, absent any limiting provision in a negotiated agreement. Though the parties agreed to general provisions for teacher evaluations, the agreement did not prohibit the Board from considering attendance in its teacher evaluations. Furthermore, the consideration of attendance data would be consistent with the evaluation standards outlined in Standard 7 regarding responsibility and professionalism. Absent any additional term, or agreement, we cannot conclude that the Board gave away its right to evaluate its employees and consider attendance data. The inclusion of teacher attendance data, in this case, was purely a matter of professional discretion.

{¶ 23} In so finding, we pause to address the Association's concern that the inclusion of attendance data will impact an employee's decision to utilize contractually negotiated days off of work. There are no facts before this court that any employee has been adversely affected by the inclusion of attendance data. In fact, the four named parties in this suit have attendance data of 93 percent or greater and are highly rated as either "Skilled" or "Accomplished".[2] While the Association may speculate that the inclusion of attendance data may be used to dissuade eligible teachers from utilizing contractually bargained-for sick and leave days, we decline to address their concerns in the abstract. If the evidence showed that eligible teachers were adversely affected in their reviews based on permissible use of sick or leave time, the individual teacher would have due process remedies as provided for in the negotiated agreement at Article VII Section 11(C).

{¶ 24} Accordingly, we find the trial court erred by ordering the parties to arbitrate the issue of whether attendance data may be considered in the evaluation of employees, as the procedure for evaluation is retained by the Board and subject to the exceptions contained in the negotiated agreement. No provision in the negotiated agreement alters that right.

---

2. Teachers are rated on a progressive scale: Ineffective, Developing, Skilled, or Accomplished.

Therefore, we sustain the Board's assignments of error and remand the cause to the trial court for further proceedings.

{¶ 25}   Judgment reversed and remanded.

PIPER, P.J., and S. POWELL, J., concur.