[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 478.]

GERIG ET AL., APPELLANTS, *v.* KAHN ET AL.; ST. VINCENT MERCY MEDICAL
CENTER, APPELLEE.

[Cite as *Gerig v. Kahn*, 2002-Ohio-2581.]

*Contracts—Signatories to a contract may enforce an arbitration provision against a nonsignatory who seeks a declaration of the signatories' rights and obligations under the contract.*

(No. 2001-0968—Submitted March 27, 2002—Decided June 19, 2002.)

APPEAL from the Court of Appeals for Lucas County, No. L-00-1135.

————————————

**DOUGLAS, J.**

{¶1} On January 18, 1997, while under the care of Gary Kahn, M.D., Dawn Gerig gave birth to Matthew Gerig at St. Vincent Mercy Medical Center. After the birth, it was discovered that Matthew had several birth defects.[1] On March 13, 1997, St. Vincent and Kahn signed an affiliation agreement memorializing Kahn's new status as a St. Vincent employee. The agreement also addressed St. Vincent's obligations to Kahn regarding medical malpractice insurance coverage. On August 4, 1997, Matthew's parents and Matthew Gerig, by and through his mother, filed a complaint against Kahn,[2] alleging that Matthew's birth defects resulted from medical malpractice committed by Kahn during Matthew's delivery.

———————

1. Dawn Gerig testified during her deposition in 1999 that Matthew has cerebral palsy and is mentally handicapped. At the time of deposition, the full extent of his mental and physical disabilities had not been established. Matthew's twin sister, Hannah, born approximately thirty minutes before Matthew, does not suffer from any birth defects.

2. The complaint was later amended to add St. Vincent as a party-defendant.

**{¶2}** At the time that the lawsuit was filed, St. Vincent had insured Kahn against medical malpractice claims through P.I.E. Mutual Insurance Company with liability limits up to $4 million. St. Vincent also funded a self-insurance plan to pay malpractice and general liability claims. While the Gerigs' medical malpractice action was pending, P.I.E. was found to be insolvent, and on March 23, 1998, it was ordered into liquidation pursuant to R.C. 3903.16. The liquidation order prompted appellant Ohio Insurance Guaranty Association ("OIGA") to get involved in the Gerigs' malpractice lawsuit. OIGA was created by the Ohio Insurance Guaranty Association Act ("Act") and pays "covered claims," as defined by the Act, brought against insolvent insurance companies. R.C. Chapter 3955.

**{¶3}** Although Kahn had been insured by P.I.E. for malpractice liability up to $4 million, recovery from OIGA is statutorily limited to $300,000. Moreover, pursuant to R.C. 3955.13(A),[3] OIGA is obligated to pay claims only after claimants have exhausted their rights under all other insurance policies where recovery is possible.

**{¶4}** After learning of P.I.E.'s insolvency, the Gerigs reviewed the affiliation agreement and determined that, because of P.I.E.'s insolvency, the agreement required St. Vincent to insure Kahn through its self-insurance plan up to $4 million against medical malpractice claims[4] such as the Gerigs' that were made

---

3. **{¶a}** R.C. 3955.13(A) provides:
    **{¶b}** "Any person having a covered claim upon which recovery is also presently possible under an insurance policy written by another insurer shall be required first to exhaust his rights under such other policy."

4. **{¶a}** Specifically, the Gerigs rely on Section 8 of the affiliation agreement, which provides:
    **{¶b}** "*Other Duties of the Employer.* During the term of this Agreement, the Employer shall:
    **{¶c}** "* * *
    **{¶d}** "(b) Provide at its expense professional liability insurance or self-insurance with coverage limits not less than is required for members of the active medical staff of St. Vincent Mercy Medical Center, protecting the Employer and the Physician against all claims of or for malpractice and the cost and expense of defending same. * * *"

after its date.[5]  On September 9, 1999, the Gerigs filed a complaint for declaratory judgment, pursuant to R.C. 2721.03,[6] asking the court to declare that the affiliation agreement in fact so required.  The Gerigs named St. Vincent, OIGA, and Kahn as defendants in the declaratory judgment action.

{¶5} OIGA also filed a cross-claim for declaratory judgment against St. Vincent, asking the court to declare that the affiliation agreement between St. Vincent and Kahn required St. Vincent to indemnify Kahn.  OIGA further asked the court to declare that, pursuant to R.C. 3955.13(A), OIGA is not obligated to pay any damages that may be awarded to the Gerigs unless and until the Gerigs have exhausted St. Vincent's self-insurance.

{¶6} Kahn filed a counterclaim for declaratory judgment also asking the court to declare that St. Vincent had a contractual duty to allocate $4 million in self-insurance for his indemnification.

{¶7} St. Vincent, relying on an arbitration clause contained in the affiliation agreement, moved the court to stay the proceedings in the medical malpractice action and the declaratory judgment action and also sought an order compelling arbitration of the dispute regarding whether St. Vincent is legally required, pursuant to the agreement, to insure Kahn through its self-insurance plan.

{¶8} The Gerigs and OIGA opposed St. Vincent's motion, arguing that they could not be compelled to arbitrate the dispute because they were not parties to the affiliation agreement and therefore were not bound by the arbitration clause therein.

---

5. Although the date of the agreement was March 13, 1997, almost two months after Matthew was born, the Gerigs contend that the insurance applies because the agreement covers "claims," and the Gerigs' claim was made after the agreement was executed.

6. {¶a}  At the time the Gerigs filed their complaint for declaratory judgment, R.C. 2721.03 provided:
   {¶b}  "Any person interested under a * * * written contract * * * may have determined any question of construction or validity arising under such instrument * * * and obtain a declaration of rights, status, or other legal relations thereunder."  144 Ohio Laws, Part II, 2902, 2930.

The trial court denied St. Vincent's motion to compel arbitration, concluding that, if granted, appellants would be deprived of their right to be heard with regard to the interpretation of the affiliation agreement.

**{¶9}** St. Vincent appealed the trial court's ruling to the Court of Appeals for Lucas County.[7] The court of appeals reversed the trial court's decision and held that the doctrine of equitable estoppel prevented the Gerigs and OIGA from asserting that the arbitration provision in the agreement should be disregarded while simultaneously asserting that other provisions of the agreement were valid and enforceable. The Gerigs and OIGA appealed the judgment of the court of appeals.

**{¶10}** The cause is before this court upon our allowance of a discretionary appeal.

**{¶11}** The issue in this case is whether signatories to a contract may enforce an arbitration provision against a nonsignatory who seeks a declaration of the signatories' rights and obligations under the contract. For the reasons that follow, we hold that they may, and, accordingly, we affirm the judgment of the court of appeals.

**{¶12}** In their declaratory judgment action, the Gerigs seek a declaration that the affiliation agreement between St. Vincent and Kahn requires St. Vincent to insure Kahn through its self-insurance plan against the Gerigs' medical malpractice claim. OIGA seeks the same declaration in its cross-claim against St. Vincent. The Gerigs concede that if Kahn were to seek this same declaration, he would be forced to arbitrate the issue pursuant to the agreement's arbitration provision. The arbitration clause in the affiliation agreement covers this issue and is undeniably broad. Specifically, it provides:

---

7. The denial of a motion for stay and for order to compel arbitration was a final appealable order pursuant to R.C. 2711.02. 143 Ohio Laws, Part I, 964. The provision is now R.C. 2711.02(C).

4

{¶13} "Any controversy or claim arising out of, or relating in any way to, this Agreement or the breach thereof shall be resolved by arbitration in the City of Toledo, Ohio, in accordance with the rules then obtaining of the American Arbitration Association."

{¶14} The Gerigs and OIGA, however, contend that, as nonsignatories, they are not bound by the arbitration provision. In support of their position, the Gerigs and OIGA rely on the principle that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Council of Smaller Enterprises v. Gates McDonald & Co*. (1998), 80 Ohio St.3d 661, 665, 687 N.E.2d 1352, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

{¶15} St. Vincent, on the other hand, urges this court to affirm the decision of the court of appeals, wherein the court held that the Gerigs and OIGA are bound by the arbitration provision. The court determined that it would be inequitable to allow the Gerigs and OIGA to avoid a burden of the agreement, i.e., arbitration, while simultaneously seeking a benefit of the agreement, i.e., medical malpractice insurance coverage for Kahn.

{¶16} In support of its decision, the court of appeals cited *Fawn v. Heritage Mut. Ins. Co*. (June 30, 1997), Franklin App. No. 96APE12-1678, 1997 WL 359322. Kim Fawn was injured in an automobile accident while she was operating a vehicle owned by Robert Beach. After settling with the tortfeasor, Fawn sought underinsured motorist coverage from Beach's insurer, Heritage Mutual Insurance Company. Fawn subsequently sued Heritage, and Heritage moved for a stay pending arbitration pursuant to its contract of insurance with Beach. The trial court denied the motion, and Heritage appealed. The court of appeals reversed, holding that, although she had not signed the contract, Fawn was bound by the arbitration provision because, by accepting the benefit of the contract — underinsured motorist

coverage — she also accepted its burden — arbitration. The court held that third-party beneficiaries acquire no greater rights than that provided in the contract. *Union S. & L. Co. v. Cook* (1933), 127 Ohio St. 26, 186 N.E. 728, paragraph one of the syllabus.

{¶17} The Gerigs and OIGA argue that the holding in *Fawn* is not applicable to this case because, unlike Fawn, they are neither insureds nor third-party beneficiaries of the agreement. They claim instead to be "incidental" beneficiaries with sufficient interest in the affiliation agreement to satisfy the requirement for bringing a declaratory judgment action under R.C. 2721.03 but at the same time too disinterested to be bound by the arbitration provision. We find this argument unpersuasive.

{¶18} We acknowledge that the relationship between Fawn and Heritage was different from the relationship between the parties in this case. We find, however, that the differences make application of the equitable estoppel doctrine even more appropriate here. Unlike Fawn, the Gerigs and OIGA do not have a direct dispute with a signatory regarding their rights under the agreement. Rather, the Gerigs and OIGA have an interest in Kahn's dispute with St. Vincent regarding Kahn's rights under the agreement. Because appellants derive their interest in the agreement through Kahn, they can have no greater right than Kahn to a judicial interpretation of the agreement. *Luntz v. Stern* (1939), 135 Ohio St. 225, 230, 14 O.O. 62, 20 N.E.2d 241.

{¶19} Moreover, we find that it would be inequitable to allow an interested nonsignatory to determine the forum in which an agreement is to be interpreted when the signatories previously agreed in writing to arbitrate any controversy relating to the agreement. Accordingly, we hold that a signatory to a contract may enforce an arbitration provision against a nonsignatory seeking a declaration of the signatories' rights and obligations under the contract.

{¶20} Our holding is in keeping with this court's long history of favoring and encouraging arbitration. *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, paragraph one of the syllabus; *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711, 590 N.E.2d 1242. Moreover, it is consistent with Ohio's Arbitration Act, codified in R.C. Chapter 2711, which embodies the public policy of supporting arbitration. Specifically, R.C. 2711.01 provides:

{¶21} "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable * * *."

{¶22} And R.C. 2711.02(B) provides:

{¶23} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *."

{¶24} Furthermore, while the specific issue in this case appears to be one of first impression, we note that many federal and state courts have recognized exceptions to the rule that a person cannot be compelled to arbitrate a dispute which he did not agree to submit to arbitration. See, e.g., *Hilti, Inc. v. Oldach* (C.A.1, 1968), 392 F.2d 368, 369, fn. 2; *Thomson-CSF, S.A. v. Am. Arbitration Assn.* (C.A.2, 1995), 64 F.3d 773, 778; *Inernatl. Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH* (C.A.4, 2000), 206 F.3d 411, 418; *Grigson v. Creative Artists Agency* (C.A.5, 2000), 210 F.3d 524; *Arnold v. Arnold Corp.-Printed Communications for Business* (C.A.6, 1990), 920 F.2d 1269; *Hughes Masonry Co., Inc. v. Greater Clark Cty. School Bldg. Corp.* (C.A.7, 1981), 659 F.2d 836, 839; *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.* (C.A.11, 1993), 10 F.3d 753, 757; *Infiniti of Mobile, Inc. v. Office* (Ala.1999), 727 So.2d 42, 48; *Am. Ins. Co. v. Cazort*

(1994), 316 Ark. 314, 320-323, 871 S.W.2d 575, 579-580; *Harris v. Superior Court* (1986), 188 Cal.App.3d 475, 478, 233 Cal.Rptr. 186; *Application of General Re Corp. v. Foxe* (1998), 177 Misc.2d 867, 878, 678 N.Y.S.2d 459; *In re FirstMerit Bank* (2001), 44 Tex.Sup.Ct.J. 900, 52 S.W.3d 749. See, also, 2 Macneil, Speidel, and Stipanowich, Federal Arbitration Law (1994), Section 18.7.2.3 (when seeking rights under a contract, a nonsignatory is bound by the contract's arbitration clause).

{¶25} We now turn to the second issue raised in OIGA's cross-claim against St. Vincent. In addition to asking the court to interpret the affiliation agreement and declare that it requires St. Vincent to insure Kahn through its self-insurance plan, OIGA also requests that the court declare St. Vincent's self-insurance to be "other insurance" within the purview of R.C. 3955.13, such that it must be exhausted before OIGA is obligated to provide coverage. St. Vincent concedes that the exhaustion issue raised by OIGA requires interpretation of statutory language and is not a matter for the arbitrator to decide. Nevertheless, St. Vincent contends that the exhaustion issue is secondary to the coverage issue, and therefore it should also be stayed pending the outcome of the arbitration. We agree.

{¶26} Although the exhaustion issue could be resolved before coverage is determined, the arbitrator's determination regarding coverage may render the exhaustion issue moot. That is, if the arbitrator determines that the affiliation agreement does not require St. Vincent to insure Kahn through its self-insurance plan, then the determination of whether the exhaustion provision in R.C. 3955.13 applies to St. Vincent's self-insurance would be irrelevant. Therefore, in the interest of judicial economy, we conclude that the exhaustion issue should be stayed pending the arbitrator's determination of coverage.

{¶27} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., DESHLER, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment.

DANA A. DESHLER, JR., J., of the Tenth Appellate District, sitting for RESNICK, J.

————————

Williams, Jilek, Lafferty, Gallagher & Scott Co., L.P.A., and Martin W. Williams, for appellants Matthew Gerig, Dawn Gerig, and LaMar Gerig.

Vorys, Sater, Seymour & Pease, L.L.P., F. James Foley and Rosemary D. Welsh, for appellant Ohio Insurance Guaranty Association.

Shumaker, Loop & Kendrick, L.L.P., John C. Barron and Neema M. Bell, for appellee.

————————