[Cite as *Global Pacific, L.L.C v. Kirkpatrick*, 2017-Ohio-1332.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| GLOBAL PACIFIC, LLC, et al., | : | |
| Plaintiffs, | : | CASE NO. CA2016-08-163 |
| - vs - | : | O P I N I O N<br>4/10/2017 |
| LARRY T. KIRKPATRICK, et al., | : | |
| Defendants/Third-Party<br>Plaintiffs-Appellees, | : | |
| | : | |
| - vs - | : | |
| | : | |
| BLUELINE RENTAL, LLC, | : | |
| Third-Party Defendant-Appellant. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2015-09-2095

Kegler, Brown, Hill & Ritter Co., Larry T. McClatchey, Jason Beehler, Jane K. Gleaves, 65 East State Street, Suite 1800, Columbus, Ohio 43215, for appellees Larry Kirkpatrick, KZB Properties, LLC, KZB Holdings, LLC and R&K Machinery, LLC

Frost Brown Todd, LLC, Thomas B. Allen, Charles B. Galvin, 9277 Centre Pointe Drive, Suite 300, West Chester, Ohio 45069, for appellant

Womble Carlyle Sandridge & Rice, LLP, Louis J. Rouleau, 1200 Nineteenth Street, N.W., Suite 500, Washington DC 20036, for appellant

**PIPER, J.**

{¶ 1} Third-party defendant-appellant, BlueLine Rental, LLC, appeals a decision of

the Butler County Court of Common Pleas ordering it to participate in mediation with plaintiffs, Global Pacific, LLC, et al., and defendants-appellees/third-party plaintiffs, Larry Kirkpatrick, et al.

{¶ 2} The Reale Group (comprised of Global Pacific, LLC and Christopher Reale) and the Kirkpatrick Group (comprised of Larry Kirkpatrick, KZB Holdings, LLC, R&K Machinery, LLC, and KZB Properties, LLC) were business partners. In 2006, the two groups executed an operating agreement for R&K Machinery, LLC (the 2006 R&K Operating Agreement). The groups formed R&K Machinery to operate a BlueLine franchise in Hamilton, Ohio (the Franchise). BlueLine is a rental construction equipment company with franchises throughout the country. The Reale Group and the Kirkpatrick Group also formed KZB Properties, LLC, which was a limited liability corporation to hold real estate for the Franchise and run it.

{¶ 3} Within the 2006 R&K Operating Agreement, the Reale Group and the Kirkpatrick Group agreed to mediate any disputes that arose between them, and to arbitrate any disputes if mediation proved unsuccessful. The only two parties to the 2006 R&K Operating Agreement were the Reale Group and the Kirkpatrick Group.

{¶ 4} Christopher Reale, who is the sole member and owner of Global Pacific, LLC, also owned and operated three other BlueLine franchises in Hawaii through various companies he set up for that purpose. In 2008, Reale started suffering economic hardship and began defaulting on obligations to his franchises' creditors. In 2010, Reale entered an agreement (the 2010 Agreement) with BlueLine wherein BlueLine wrote off significant amounts of Reale's debts in exchange for Reale surrendering his interest in his three Hawaii franchises, as well as the Franchise he operated with the Kirkpatrick Group in Ohio. In Section Eight of the 2010 Agreement, the Reale Group agreed to transfer all its interests in the Franchise to the Kirkpatrick Group, and BlueLine agreed to prepare the "assignments of

membership interest."

{¶ 5}  Also within the 2010 Agreement, BlueLine and the Reale Group agreed that any disputes arising out of their agreement would be submitted for binding arbitration in Honolulu, Hawaii.  The parties also agreed that Hawaii law would control any disputes between them.

{¶ 6}  In 2011, the Kirkpatrick Group entered an agreement with BlueLine to sell certain assets once belonging to R&K Machinery.  Within that Asset Purchase Agreement, the Kirkpatrick Group asserted its sole ownership of the Franchise.  At the same time, the Kirkpatrick Group and BlueLine entered a Termination Agreement as a corollary agreement to the Asset Purchase Agreement.  Within that agreement, the Kirkpatrick Group released BlueLine "from any and all claims, demands, actions, causes of action, suits, costs, damages, attorney's fees, expenses and liabilities of every kind, character and description, whether known or unknown, suspected or unsuspected, either direct or consequential, at law or in equity, which it or they may have now, may have had at any time heretofore, or may have had at any time hereafter, arising from, or in any manner incidental to, the Franchise agreements, the Franchised Business or any matter, thing or event whatever occurring or failing to occur at any time in the past * * *."  Also within the agreement, the Kirkpatrick Group promised that they had not, "and will not, file, commence, institute, prosecute or join in any charge, claim, suit, action or other proceeding" against BlueLine regarding the Franchise.

{¶ 7}  In 2014, the Reale Group and BlueLine also entered a Release Agreement, which contained a "full and complete" mutual release of "all duties and performance obligations" contained in the 2010 Agreement.

{¶ 8}  In 2015, the Reale Group sued the Kirkpatrick Group in the Butler County Court of Common Pleas, claiming that its interest in the Franchise was never actually transferred. The Reale Group sought unallocated profits, distributions, and damages for the deprivation of

ownership rights it claimed to still possess in the Franchise.

{¶ 9} In 2016, the Kirkpatrick Group moved the trial court to stay the proceedings and compel arbitration based on the 2006 R&K Operating Agreement. The day after moving the trial court to compel arbitration, the Kirkpatrick Group filed a third-party complaint against BlueLine, claiming that if it was liable to the Reale Group, BlueLine would have to indemnify it. Soon thereafter, the trial court granted the Kirkpatrick Group's motion to stay the proceedings pending arbitration. However, the trial court ordered the parties to complete discovery before proceeding to mediation. The trial court also ordered the parties to arbitrate the matter per the 2006 R&K Operating Agreement if mediation proved unsuccessful.

{¶ 10} Within the trial court's order, it specifically ordered BlueLine to participate in mediation and arbitration pursuant to the terms of the 2006 R&K Operating Agreement. BlueLine filed a motion for judgment on the pleadings, or in the alternative, a motion to stay pending arbitration, which the trial court did not consider because such was filed hours after the trial court issued its arbitration/mediation order. BlueLine now appeals the trial court's decision to order its participation in arbitration and discovery, as well as failing to grant its motion for judgment on the pleadings, raising three assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED BY ORDERING BLUELINE TO SUBMIT TO MEDIATION AND/OR ARBITRATION PURSUANT TO ¶ 8.4 OF THE 2006 R&K OPERATING AGREEMENT WHERE BLUELINE IS NOT A PARTY TO THAT AGREEMENT.

{¶ 13} BlueLine argues in its first assignment of error that the trial court erred by ordering it to participate in arbitration when it was not a party to the contract between the Reale Group and the Kirkpatrick Group.

{¶ 14} "In Ohio, a party to an action generally cannot be required to arbitrate a dispute between itself and a second party unless the parties have previously agreed in writing

to arbitration of those disputes." *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, ¶ 32 (10th Dist.). Arbitration is a matter of contract and, despite the strong policy in its favor, a party cannot be compelled to arbitrate a dispute which he has not agreed to submit to arbitration. *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. Clinton No. CA2006-07-021, 2007-Ohio-1655. This legal principle is based on the fact that "arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *Council of Smaller Enters. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666 (1998). Because no party can be required to submit to arbitration when it has not first agreed to do so, in a case where the party resisting arbitration is not a signatory to any written agreement to arbitrate, a presumption against arbitration arises. *Id.* at 667.

{¶ 15} For example, the Eighth District Court of Appeals affirmed a trial court's denial of a motion to stay and referral to arbitration because none of the appellees were signatories to the appellant's employment contract and thus could not be required to submit their claims to arbitration pursuant to a contract they did not sign. *Boedeker v. Rogers*, 136 Ohio App.3d 425, 429 (8th Dist.1999). Similarly, the Ohio Supreme Court determined that a liquidator, who was not a signatory on the original contract, was not bound to arbitration agreements entered by the insolvent insurer because she had not signed the contract to which the arbitration agreement applied. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262.

{¶ 16} The record is undisputed that BlueLine was not a signatory to the 2006 R&K Operating Agreement between the Reale Group and the Kirkpatrick Group. Nor is it disputed that the arbitration clause at issue is located within that 2006 R&K Operating Agreement to which BlueLine is not a party. As such, the trial court cannot compel BlueLine to submit to arbitration pursuant to the 2006 R&K Operating Agreement because BlueLine did not agree to permit a mediator or arbitrator to determine disputes between it and the Kirkpatrick Group.

{¶ 17} Even so, the Kirkpatrick Group argues that the trial court properly compelled BlueLine to participate in arbitration and mediation because BlueLine is a third-party beneficiary of its 2006 R&K Operating Agreement. We disagree.

{¶ 18} Nonsignatories can be compelled to arbitrate if the party is bound to an arbitration agreement under ordinary contract and agency principles. *Peters v. Columbus Steel Castings Co.*, 10th Dist. Franklin No. 05AP-308, 2006-Ohio-382. For example, the Supreme Court of Ohio held pursuant to the equitable estoppel doctrine, a nonsignatory can be bound by an arbitration clause when the nonsignatory seeks a declaratory judgment as to the signatories' rights and obligations under the contract containing the arbitration clause. *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, ¶ 19. In addition to estoppel, a nonsignatory can be bound to an arbitration agreement via the theories of incorporation by reference, assumption, agency, veil-piercing/alter ego, and third-party beneficiary. *Columbus Steel Castings Co.* at ¶ 13.

{¶ 19} To determine if a nonsignatory to a contract is subject to certain promises contained in the agreement, courts must determine if the nonparty was an intended beneficiary using the "intent to benefit" test. *Composite Concepts Co. v. Berkenhoff GmbH*, 12th Dist. Warren No. CA2009-11-149, 2010-Ohio-2713, ¶ 17. Pursuant to the "intent to benefit" test, if the promisee intends that a third-party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. *Hill v. Sonitrol of Sw. Ohio, Inc.*, 36 Ohio St.3d 36 (1988). If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract. *Id.* The mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract is insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary. *Id.*

{¶ 20} The record contains no evidence to establish that BlueLine is an intended third-party beneficiary to the 2006 R&K Operating Agreement. While the Kirkpatrick Group argues that BlueLine is a third-party beneficiary because the 2006 R&K Operating Agreement was written with the intent to benefit BlueLine by running a successful BlueLine franchise, that contention is not supported by the record. Instead, BlueLine has not sued, and is not being sued, based on the R&K Operating Agreement, but rather the 2010 agreement when the Reale Group walked away from the Franchise and turned over its interest to the Kirkpatrick Group. Within that agreement, BlueLine agreed to execute the assignment documents, which is the heart of the dispute between the Kirkpatrick Group and BlueLine and the focus of the Kirkpatrick Group's third-party plaintiff suit against BlueLine.

{¶ 21} Additionally, and despite the Kirkpatrick Group's argument, the R&K Operating Agreement makes clear that it was entered into by the Kirkpatrick Group and the Reale Group for those two parties' benefits in attempting to run a successful BlueLine franchise in Ohio. The fact that BlueLine would benefit in some way by there being a successful BlueLine franchise in Ohio would be merely incidental where it was not contemplated by the groups that BlueLine would benefit from their 2006 R&K Operating Agreement.

{¶ 22} Moreover, the record indicates that BlueLine has not claimed any third-party beneficiary rights, has not tried to enforce any rights allegedly created by the agreement, nor has it attempted to assert a claim or defense based on the 2006 R&K Operating Agreement. As such, there is no indication in the record to suggest that BlueLine was an intended third-party beneficiary to the R&K Operating Agreement.

{¶ 23} Nor is there any indication in the record that BlueLine is estopped from denying the arbitration clause as the Kirkpatrick Group suggests. The Kirkpatrick Group suggests that BlueLine accepted the benefits of the R&K Operating Agreement because there was "the existence and operation of an active franchisee that paid BlueLine as

franchisor." However, we reiterate that BlueLine was not a party to the 2006 R&K Operating Agreement, and there is no evidence in the record that BlueLine has directly accepted benefits of the R&K Operating Agreement other than the incidental fact that it is the franchisor.

{¶ 24}   Again, and while the Ohio Supreme Court has applied equitable principles to compel arbitration by stating "when seeking rights under a contract, a nonsignatory is bound by the contract's arbitration clause", such is not the case here.  *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, ¶ 24.  BlueLine has not tried to enforce any rights allegedly created by the 2006 R&K Operating Agreement, nor has it attempted to assert a claim or defense based on the 2006 R&K Operating Agreement.

{¶ 25}   The only specific reference to BlueLine that the trial court made within its written decision was that "for purposes of expediency and judicial economy" BlueLine was ordered to participate in alternative dispute resolution along with the groups.  However, and even though arbitration and mediation often encourages judicial economy, that judicial economy does not trump the fact that BlueLine neither signed the 2006 R&K Operating Agreement, nor is an intended third-party beneficiary of that contract.

{¶ 26}   In fact, given the releases and termination agreements entered by BlueLine and the groups, it is possible that BlueLine may be released completely from the suit.  Forcing a nonparty/signatory to arbitrate a claim to which it may not even be a valid party is the opposite of judicial economy.[1]

{¶ 27}   After reviewing the record, we find that the trial court erred in ordering BlueLine to participate in arbitration and/or mediation.  As such, we sustain BlueLine's first assignment

---

1. This court is in no way making any determination as to whether BlueLine should be released from the suit.

of error.

{¶ 28} For ease of discussion, we will address BlueLine's final two assignments of error together.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED BY STAYING ALL 'FURTHER LITIGATION ACTIVITIES' BUT NEVERTHELESS ORDERING THE PARTIES TO ENGAGE IN DISCOVERY RELATING TO ALL OF THE PARTIES' 'DIFFERENCES.'

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE TRIAL COURT ERRED BY DECLINING TO ENTERTAIN BLUELINE'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR STAY PENDING ARBITRATION.

{¶ 33} BlueLine argues in its second assignment of error that the trial court erred by ordering it to participate in discovery in anticipation of mediation/arbitration, and within its third, that the trial court erred by not ruling on its motion for judgment on the pleadings.

{¶ 34} Given the manner in which this court ruled on BlueLine's first assignment of error, specifically finding that BlueLine is not subject to the arbitration clause within the 2006 R&K Operating Agreement, we sustain BlueLine's second assignment of error and find the third to be moot. BlueLine shall not be required to engage in discovery until the trial court first addresses and rules upon the outstanding pleadings BlueLine filed since BlueLine might not be a proper party to the action given the releases and termination agreements entered between BlueLine, the Reale Group, and the Kirkpatrick Group.

{¶ 35} Upon lifting the stay regarding BlueLine, the trial court can then issue judgment on BlueLine's motions and determine the proper course of action from that point forward regarding the parties and the litigation.

{¶ 36} Judgment reversed, and the case is remanded to the trial court for further

proceedings consistent with this opinion.

HENDRICKSON, P.J., and M. POWELL, J., concur.