[Cite as *State ex rel. Yost v. Settlers Walk Home Owners Assn.*, 2022-Ohio-3106.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, EX REL. DAVE YOST, ATTORNEY GENERAL | : | |
| | : | CASE NO. CA2021-11-102 |
| Appellee, | : | O P I N I O N |
| | | 9/6/2022 |
| - vs - | : | |
| | : | |
| SETTLERS WALK HOME OWNERS ASSOCIATION, et al., | : | |
| Appellant. | | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19 CV 92490


Scott Myers, Assistant Attorney General, and Daniel J. Martin, for appellee.

Pickrel, Schaeffer & Ebeling, Co., and Michael W. Sander, for appellee, MCS Land Development, LLC.

Scott G. Oxley Co., LPA, and Scott G. Oxley, for appellant.



**HENDRICKSON, J.**

{¶1} Appellant, Settlers Walk Home Owners Association ("the Association"), appeals from the decision of the Warren County Court of Common Pleas granting summary judgment in favor of appellee, MCS Land Development L.L.C. ("MCS"), as to MCS's cross-claim for indemnification against the Association. For the reasons detailed below, we reverse the decision of the trial court, and remand the matter for proceedings consistent

with this opinion.

Description of the Properties at Issue

{¶2} This case involves the ownership, maintenance, and repair of the Remick Lake Dam ("the Dam"), a Class I earthen dam located on a tributary to Clear Creek in Warren County. The Dam is considered a Class I high hazard structure due to its potential downstream hazard. Ohio Adm.Code 1501:21:13-01(A)(1). Based upon the Dam's Class I designation, any sudden failure of the Dam would result in the probable loss of life and flooding of high value property downstream. Relevant here, the properties downstream from the Dam include public roadways, a strip mall, eight homes, and a daycare facility.

{¶3} Remick Lake is located in Warren County parcel number 0409371019, which has been owned by the Association since 1998. The parcel containing Remick Lake is located on the northwestern edge of a residential neighborhood ("Settlers Walk") and borders several residential homes, other property owned by the Association, and property now owned by MCS. In 2001, MCS purchased Warren County parcel number 0409371046, which borders the west side of Remick Lake, the Association's property, and houses in Settlers Walk. MCS's parcel primarily consists of a community shopping center, which is part of the strip mall mentioned above, as well as a retaining wall and an access road. MCS's parcel borders the entirety of the Association's property between Remick Boulevard and Lytle Five Points Road.

{¶4} The Dam has been in place since approximately 1966, yet the physical location of the Dam is disputed by the parties. We note that, pursuant to Ohio law a "dam" means "any artificial barrier together with any appurtenant works, which either does or may impound water[.]" Ohio Adm.Code 1501:21-3-01(I). The term "appurtenant works" means "interrelated elements or components of the dam including * * * outlet works and spillway channels." Ohio Adm.Code 1501:21-3-01(B). In accordance with these definitions, the

Association readily admits that part of the Dam is located on its property in parcel 0409371019. Conversely, MCS unequivocally denies that any part of the Dam is located on its property.

{¶5} Notwithstanding MCS's position, the record reveals that several components of the Dam are located on MCS's property, including "a small portion of the Dam consisting of the Dam's emergency spillway and a portion of the downstream slope," as well as "the southern-most portion of the [principal] spillway channel[.]" Images provided by Warren County Auditor's Office further confirm that a portion of the Dam's earthen embankment, which is positioned along the access road and retaining wall on MCS's property, as well as the emergency spillway, are, at least partially, located on MCS's property. Thus, while a majority of the Dam is located on parcel 0409371019, i.e., property owned by the Association, there is evidence in the record that some of the Dam's components, namely its channels, spillways, and embankment, are located on MCS's property in parcel number 0409371046.

Ownership and Maintenance of the Dam

{¶6} The Chief of the Division of Water Resources ("the Chief"), Ohio Department of Natural Resources (hereinafter referred to as "ODNR" or "the Division") has statutory authority pursuant to R.C. Chapter 1521 to regulate dams in Ohio. According to R.C. 1521.062(E), the owner of a dam is required to monitor, maintain, and operate the structure and its appurtenances safely in accordance with state rules, orders, and other requirements. An owner is defined as "those who own * * * a dam or levee." Ohio Adm.Code 1501:21-3-01(W).

{¶7} Regarding dam maintenance, all dams in Ohio are required to be inspected by a registered professional engineer. R.C. 1521.062(A), (C). The inspection shall ensure that the continued operation and use of the dam does not constitute a hazard to life, health,

or property. *Id.* After an inspection, "the chief shall inform the owner of any required repairs, maintenance, investigations, and other remedial and operational measures." R.C. 1521.062(D). The chief shall then order the owner to perform such remedial or operational measures and permit the owner a reasonable time in which to complete the required remediation. *Id.* Notably, the cost of completing the necessary repairs, maintenance, investigations, or other remedial measures "shall be borne by the owner." *Id.*

History of ODNR's Inspections of the Dam

{¶8} In March 2016, ODNR conducted an inspection of the Dam in accordance with R.C. 1521.062(A). Representatives from MCS and the Association were present at the Dam site before the inspection and the pre-inspection checklist identified MCS and the Association as the owners of the Dam. After ODNR completed its inspection, the findings were generated into a report ("2016 Inspection Report"), which provided a detailed breakdown of certain repairs and monitoring that were necessary to bring the Dam into compliance with Ohio law. Relevant here, the repairs included removing trees, roots, and brush from the embankment and principal spillway area; seeding and establishing proper grass coverage of the emergency spillway area; monitoring the condition of the concrete retaining wall; and repairing the erosion on the right end of the upstream slope. The 2016 Inspection Report also detailed several repairs to be completed by a registered professional engineer, including redirecting the emergency spillway flow away from a nearby daycare facility.

{¶9} According to the 2016 Inspection Report, the owners were also required to prepare and submit an "Operation, Maintenance, and Inspection Manual" ("OMI"), wherein they were to document their inspection and monitoring. In addition to the OMI, the owners were further required to prepare an Emergency Action Plan ("EAP"), wherein they were to establish emergency preparedness procedures in case of a dangerous issue with the Dam.

Due to the Dam's designation as a Class I structure, the EAP was required to be prepared by a registered professional engineer.

{¶10} A few months after the inspection, in September 2016, ODNR sent MCS and the Association a letter and a copy of the 2016 Inspection Report. In its letter, ODNR stated that, as owners, MCS and the Association were required by law to perform the repairs, maintenance, and monitoring identified in the report. The letter further stated that it was ODNR's understanding that both MCS and the Association were owners of the Dam and instructed either party to contact an ODNR representative if that belief was incorrect.

{¶11} In May 2017, more than one year after the 2016 Inspection Report was generated, the Association submitted a schedule for remedying ODNR's concerns identified in the report. According to ODNR, the provided schedule outlined an acceptable time frame for completing the necessary repairs to the Dam, however, none of the provided deadlines were met. Thereafter, in April 2018, a notice of violation was sent to MCS and the Association, which indicated the owners were required to submit a revised schedule. Despite the notice of violation, a revised schedule was not received by ODNR.

{¶12} In August 2018, the Chief of the Division issued Order 2018-103 ("Chief's Order") finding, in relevant part, that the Association and MCS were the owners of the Dam and ordered the parties, as owners, to perform various remedial measures that were identified in the 2016 Inspection Report. The Chief further ordered MCS and the Association to either repair, breach, or modify the Dam pursuant to a schedule set forth in the Chief's Order.

{¶13} The Chief's Order included a notice to MCS and the Association of their rights to appeal the Chief's Order. The notice was mailed to the parties on August 22, 2018, and indicated that the parties could request an administrative hearing regarding the Chief's Order within 30 days of that date. It is undisputed that neither MCS nor the Association

requested an administrative hearing or otherwise appealed the Chief's Order.

{¶14} Thereafter, in July 2019, a registered professional engineer with ODNR, Mia Kannik, inspected the dam and its surrounding areas. After her inspection, Kannik concluded the Dam and its surrounding areas were in the same poor condition described in the 2016 Inspection Report, and that the Dam required expedient repair, remediation, modification, or breach as directed in the Chief's Order.

Procedural History of the Case

{¶15} On August 2, 2019, nearly three years after ODNR provided MCS and the Association with the 2016 Inspection Report, the state filed a complaint for injunctive relief to enforce the Chief's Order and to permanently enjoin MCS and the Association from continuing to violate Ohio's dam safety laws.

{¶16} MCS filed an answer to the state's complaint, wherein it denied it was an owner of the Dam or that it had violated Ohio's dam safety laws. MCS also filed a counterclaim against the state for declaratory judgment, wherein it requested the trial court declare that MCS was not an "Owner" of the Dam pursuant to Ohio Adm.Code 1501:21-3-01(W) and that the Association was the sole entity responsible for any maintenance or repair of the Dam. MCS also filed a cross-claim against the Association, alleging that the Association had a duty to defend and indemnify MCS from any costs and expenses incurred or ordered as a result of complying with the Chief's Order or in defending these proceedings.

{¶17} In its answer to the state's complaint and MCS's cross-claim, the Association admitted that part of the Dam was located on its property but claimed MCS was also responsible for the repairs and maintenance of the Dam. Based upon its allegation that MCS owned part of the Dam and was jointly responsible for its upkeep, the Association filed a cross-claim against MCS alleging that MCS had a duty to defend and indemnify the Association in the instant action.

- 6 -

{¶18} Thereafter, the state and MCS moved the trial court for summary judgment on their respective claims and submitted significant evidence in support of their pending motions. Notably, the Association did not respond to either party's motion for summary judgment.

{¶19} On June 2, 2021, the magistrate issued a decision granting the state's motion for summary judgment, thereby permanently enjoining MCS and the Association from continuing to violate Ohio's dam safety laws and ordering MCS and the Association to remedy the safety violations at the Dam. The magistrate denied MCS's motion for summary judgment on its counterclaim against the state but granted it summary judgment on its cross-claim for indemnification against the Association. In so doing, the magistrate determined that because the Association's Declaration of Covenants, Conditions, and Restrictions and Reservation of Easements ("CCRs") indicated the Association was responsible for the maintenance of areas of Settlers Walk including "dams," MCS was entitled to be indemnified by the Association for any funds it spent in complying with the Chief's Order.

{¶20} The Association filed written objections to the magistrate's decision, wherein it challenged the magistrate's resolution of MCS's indemnification claim. The trial court overruled the Association's objections and adopted the magistrate's decision in its entirety. The Association now appeals from the trial court's summary judgment decision, raising the following assignment of error for our review:

{¶21} THE TRIAL COURT ERRED IN GRANTING MCS LAND DEVELOPMENT'S MOTION FOR SUMMARY JUDGMENT.[1]

---

1. We note that MCS claims in its appellee brief that the trial court's decision is not a final appealable order; however, we reject this argument. *See Wise v. Gursky*, 66 Ohio St. 2d 241, 243-244 (1981) (holding that compliance with Civ.R. 54[B] is not required to make the judgment final and appealable where the effect of the judgment as to some of the claims is to render moot the remaining claims or parties); *Gen. Acc. Ins. Co.*

**{¶22}** On appeal, the Association argues the trial court erred in awarding summary judgment in favor of MCS on its indemnification claim against the Association.

**{¶23}** We review a trial court's ruling on a motion for summary judgment de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "'De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14, quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997). Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). The moving party has the burden of demonstrating there is no genuine issue of material fact to be litigated. *State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2012-08-876. 2013-Ohio-2396, ¶ 13.

**{¶24}** "Summary judgment is not appropriate where the facts, which must be viewed in a light most favorable to the party opposing the motion, are subject to reasonable dispute." *Jackson v. Kings Island*, 58 Ohio St. 2d 357, 360, 390 (1979). Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Welco Indus. Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 346 (1993). "The reason for this is that 'summary judgment precludes a jury's

---

*v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21-22 (1989) (concluding that a partial award of summary judgment on a claim to defend and indemnify involves a substantial right and can be a final appealable order pursuant to R.C. 2505.02). *See also Dywidag Sys. Internatl., USA, Inc. v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 10AP-270, 2010-Ohio-3211, ¶ 19-22.

consideration of a case, and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion.'" *Kiep v. City of Hamilton*, 12th Dist. Butler No. CA96-08-158, 1997 Ohio App. LEXIS 2121, *19 (May 19, 1997), quoting *Shaw v. Central Oil Asphalt Corp.*, 5 Ohio App. 3d 42, 44 (9th Dist.1981).

{¶25} In the instant matter, the trial court concluded the Association has a duty to indemnify MCS. Indemnification "is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement." *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 14 (1975), citing *Maryland Cas. Co. v. Frederick Co.*, 142 Ohio St. 605, 607 (1944). Put another way, an indemnification claim only exists "if the other person was liable to pay so under the law." *Ohio Dept. of Admin. Servs. v. Robert P. Madison Internatl., Inc.*, 138 Ohio App.3d 388, 397 (10th Dist.2000). Indemnity therefore arises from either an express or an implied contract. *Travelers* at 14. Consequently, contracts for indemnification are governed by the general principles of contract enforcement.

{¶26} In awarding summary judgment in favor of MCS on its indemnification claim, both the trial court and the magistrate relied upon the Association's CCRs, which were provided in support of MCS's motion for summary judgment. Pursuant to Section 4.1 of the CCRs, the Association agreed to maintain and keep in good repair the "Area of Common Responsibility," which includes all "ponds, streams and/or wetlands located within the Properties[,] * * * including any retaining walls, bulkheads, or dams retaining water therein[.]" Based upon this language, the trial court concluded that MCS was entitled to indemnification from the Association because the CCRs "demonstrate that the homeowners' association assumed full responsibility for the maintenance and repair of the [D]am long before MCS purchased the property adjacent to Settlers Walk."

{¶27} After our review of the record, we find the trial court erred in concluding the

Association's CCRs establish, as a matter of law, that MCS is entitled to indemnification from the Association.

{¶28} A homeowners association's declaration, like the Association's CCRs, is a valid contract. *O'Bannon Meadows Homeowners Assn. v. O'Bannon Properties, L.L.C.*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-2395, ¶ 19. "It is well-established that a contract is binding only upon the parties to the contract and those in privity with them[.]" *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). Additionally, a contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *O'Bannon Meadows* at ¶ 20.

{¶29} In this case, the CCRs for the Association state the following:

> [The Association] intends by [these CCRs] to impose upon the Properties (as defined herein) mutually beneficial restrictions under a general plan of improvement for the benefit of all owners of real property within the properties. [The Association] desires to provide a flexible and reasonable procedure for the overall development of the Properties, and to establish a method for the administration, maintenance, preservation, use and enjoyment of such Properties as are now or hereafter subjected to [these CCRs]."

According to the agreement, the CCRs apply to all property described in its Exhibit A, i.e., the residential lots and common areas within Settlers Walk, and is "binding on all parties having any right, title, or interest in the described Properties or any part thereof, * * * and shall inure to the benefit of each owner thereof."

{¶30} MCS acknowledges it is not a party to the Association's CCRs, but argues on appeal that it is a third-party beneficiary to the agreement between the Association and the property owners, and therefore, has standing to enforce the agreement's covenants against the Association. After our review, we are unpersuaded by MCS's argument.

{¶31} In general, "only an intended beneficiary may exert rights to a contract of

which he is not a party." *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 277 (1994). "Ohio law * * * requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement." *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 2011-Ohio-5083, ¶ 12. Ohio contract law distinguishes between intended third-party beneficiaries and incidental third-party beneficiaries. While an intended third-party beneficiary has enforceable rights under a contract, an incidental third-party beneficiary does not. *Morrison v. Liberty Mut. Ins. Co.*, 12th Dist. Butler No. CA2021-12-163, 2022-Ohio-2458, ¶ 27, citing *Hill v. Sonitrol of Sw. Ohio, Inc.*, 36 Ohio St.3d 36 (1988).

{¶32} Here, the language of the CCRs and the circumstances surrounding their formation do not show that either the Association or the property owners of Settlers Walk intended to give MCS the benefit of the promised performance. While it is true that the Association agreed to maintain part of the Dam in Section 4.1 of the CCRs, the plain language of the agreement indicates that the Association's promise to maintain the Dam was clearly for the benefit of the property owners within Settlers Walk, not MCS. Additionally, MCS advances no argument in its motion for summary judgment or on appeal that construing it as an intended beneficiary would be mutually beneficial to the Association, which was party to the contract. *See Barger v. Elite Mgmt. Servs.*, 1st Dist. Hamilton No. C-170322, 2018-Ohio-3755, ¶ 7, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 2003-Ohio-5849, ¶ 14 (where a plaintiff is not a party to a contract, she is not in a position to urge that a contract be strictly construed against a party to it). As such, the fact that MCS might benefit in some way from the CCRs would be merely incidental, leaving MCS with no enforceable rights under the agreement. *See Global Pac., L.L.C. v. Kirkpatrick*, 12th Dist. Butler No. CA2016-08-163, 2017-Ohio-1332, ¶ 16-21.

**{¶33}** Accordingly, because MCS has not established it is an intended third-party beneficiary of the CCRs, it had no authority to enforce the Association's performance. As a result, we find the trial court erred in concluding that MCS was entitled to a benefit promised by the Association under the CCRs, i.e., that it would assume responsibility for maintaining the Dam, where MCS was not a party to that agreement. Therefore, because the CCRs do not provide MCS with a contractual basis for indemnification from the Association, the trial court's decision awarding MCS summary judgment based upon that agreement was in error.

**{¶34}** On appeal, MCS claims that even if it is not entitled to indemnification on a contractual basis, the Association alone is responsible for the costs relating to the maintenance of the Dam. Citing a prior decision of this court, MCS specifically argues that the Association is solely responsible for maintaining the Dam due to its status as an "upland property owner" and "the dominant estate." *See State ex rel. Diss v. State*, 12th Dist. Warren No. CA91-05-043, 1991 Ohio App. LEXIS 6317, *7-8 (Dec. 30, 1991) (finding ODNR's conduct in ordering the dam's owners to comply with their statutory obligation to maintain and repair a dam did not result in a taking). However, after our review, we find the record is clear that MCS and the Association are jointly required to remedy the Dam's safety violations identified in the Chief's Order.

**{¶35}** Like the ODNR chief in *Diss*, the Chief in this case was entitled pursuant to R.C. Chapter 1521 to impose maintenance, monitoring, and remedial requirements against the owners of the Dam. Pursuant to that authority, the Chief elected to order MCS and the Association, as the Dam's owners, to bring the Dam into compliance with Ohio law. MCS failed to exercise its right to appeal the Chief's findings. In the absence of an appeal, the Chief's final order lawfully placed the obligation to maintain and repair the Dam jointly upon MCS and the Association. *See Wilson v. Monroe Twp. Bd. of Trustees*, 12th Dist. Madison

No. CA95-03-010, 1995 Ohio App. LEXIS 4464, *12-13 (Oct. 9, 1995); *see also State ex rel. Celebrezze v. Cincinnati Land Dev. Corp.*, 61 Ohio App. 3d 747, 748-749 (12th Dist.1989).[2]  Accordingly, we find the Chief's Order properly declared MCS an owner responsible for the maintenance, monitoring, and remediation of the Dam.

**{¶36}** Lastly, we reject MCS's argument that it is entitled to summary judgment based upon an implied contract of indemnity between it and the Association.  An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other.  *See Losito v. Kruse*, 136 Ohio St. 183, 185 (1940) (noting that relationships of wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant meet this standard); *Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St. 3d 14, 16 (1993).  However, implied indemnification is only available to a party in limited circumstances where the party owes only secondary legal responsibilities and is passively negligent.  *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App.3d 554, 617 (10th Dist.1992).  Conversely, implied indemnity does not exist where one is actively negligent or has actual knowledge of a dangerous situation and acquiesces in the continuation thereof.  *Id.* at 564.  Moreover, indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence. *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 599 (1944).

**{¶37}** When considering the above, to be entitled to summary judgment on its indemnification claim MCS was required to prove, among other things, that reasonable

---

2. We note that in addition to awarding summary judgment to MCS on its cross-claim against the Association, the trial court also awarded summary judgment in favor of the state on its complaint for injunctive relief, thereby finding that MCS is an owner of the Dam.  Notably, MCS did not appeal the trial court's decision.

minds could only conclude that any liability attributed to MCS was not due to active negligence by MCS, but was solely a result of its relationship with the Association and the Association's wrongdoing.

{¶38} It is undisputed that neither MCS nor the Association complied with the Chief's Order, despite having ample notice of the order's requirements. According to the affidavits attached to its motion for summary judgment, MCS was aware as early as 2016 that the Dam required several remedial measures in order to comply with Ohio law. These remedial measures were discussed in detail in the 2016 Inspection Report, which was provided to MCS, and were set forth again in the Chief's Order in 2018. Notably, a representative from MCS was present on site prior to the 2016 inspection of the Dam and was on notice of its status and responsibilities as an owner at that time.

{¶39} Although MCS categorically denies that any of the necessary remediation of the Dam concerns MCS's property, and is therefore, not the responsibility of MCS, we find reasonable minds could conclude otherwise. Specifically, despite the affidavits in support of MCS's motion for summary judgment, which unequivocally state the Dam is located entirely within the common area owned by the Association, there is evidence in the record that some of the necessary remedial measures and monitoring identified in the Chief's Order relate to portions of the Dam located on MCS's property. For example, the removal of shrubs, bushes, and trees from the embankment, the rerouting of the emergency spillway, and remediation of the principal spillway channel east of MCS's property all appear to impact areas of the Dam located on parcel 0409371046. Furthermore, some of the remediations set forth in the Chief's Order concern the Dam in general, as opposed to its distinct parts, channels, or spillways, as well as the documentation and creation of an EAP and OIP. Thus, given that part of the Dam is located on property owned by MCS, it is unclear as to what, if any, amount of responsibility MCS has for the Dam's general upkeep

and the preparation and documentation of its EAP and OIP.

**{¶40}** Due to the obscurities within the record relating to MCS's responsibility for the Dam's necessary remediation, monitoring, and repair, we conclude that genuine issues of material fact remain as to whether MCS is entitled to recover on its indemnification claim. Specifically, although it is clear that portions of the Dam are located on MCS's property, it is unclear what remediation, monitoring, and repair MCS is legally and financially responsible to complete as a result of its ownership of the Dam. Consequently, because the record does not definitively establish what portion, if any, of the Dam's remediation concerns MCS's property, and is therefore MCS's responsibility, facts "that might affect the outcome of the suit under the governing law" clearly remain. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993) (defining "material facts" in the context of Civ.R. 56). That is, if part of the Dam located on MCS's property requires maintenance and repairs in accordance with the Chief's Order, a trier of fact could reasonably determine that MCS's inaction in repairing the Dam, and long-term acquiescence of the Dam's unlawful condition, constitutes active negligence and precludes recovery on its indemnification claim. This is especially true given MCS's actual knowledge of the significant dangers associated with the Dam's potential failure.

**{¶41}** As such, when viewing the evidence in the light most favorable to the Association, we find genuine issues of material fact remain as to whether MCS, as an owner, is entitled to indemnification from the Association for any funds spent in complying with the Chief's Order.[3] This is because, based on the current state of the record, reasonable minds could conclude that MCS was actively negligent in its failure to comply with the Chief's Order.

---

3. Although the issue of contribution was discussed at oral argument, neither party raised this issue below nor briefed it on appeal.

{¶42} Accordingly, based upon all of the above, we find the trial court erred in granting summary judgment in favor of MCS on MCS's indemnification cross-claim and sustain the Association's assignment of error. The trial court's judgment granting summary judgment to MCS is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

{¶43} Judgment reversed and cause remanded.

PIPER, P.J., and S. POWELL, J., concur.