[Cite as *Hogg v. Grace Community Church*, 2024-Ohio-1729.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|  |  |  |
|---|---|---|
| ALICE J. HOGG, et al, | : | |
| Appellants and Cross-Appellees, | : | CASE NOS. CA2023-02-002 |
| | | CA2023-03-004 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 5/6/2024 |
| GRACE COMMUNITY CHURCH, et al., | : | |
| Appellees and Cross-Appellants. | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH 20210092

Auman Mahan & Fury, and Richard L. Carr, Jr. and David M. Rickert, for appellants and cross-appellees, Alice J. Hogg, Steven B. Schroeder, Kenneth J. Schroeder, Faye M. Diltz, Doris M. White, Lenore F. Branson, and Jody A. Schroeder.

Howard Law Office, and R. Jason Howard, for appellant and cross-appellee, The Estate of Charles L. Schroeder.

Jess C. Weade, for appellee, Grace Community Church.

Dinsmore & Shohl LLP, and Matthew J. Bakota and Brady R. Wilson, for appellee and cross-appellant, G.A Repple & Company.

**PIPER, J.**

{¶ 1} Appellants, the heirs of Charles L. Schroeder – Alice J. Hogg, Steven B.

Schroeder, Kenneth J. Schroeder (now deceased, and substituted by the Executor of the

Estate of Kenneth J. Schroeder), Faye M. Diltz, Doris M. White, Lenore F. Branson, and Jody A. Schroeder (collectively, "the Heirs") – and appellant, the Estate of Charles L. Schroeder ("the Estate"), appeal the decision of the Fayette County Court of Common Pleas granting a motion to stay as to all parties and compelling arbitration as to all defendants filed by cross-appellant, G.A. Repple & Company ("Repple").[1]  For the reasons outlined below, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2}  In January 2021, Charles Schroeder died intestate, leaving heirs Alice Hogg, Steven Schroeder, Kenneth Schroeder, Faye Diltz, Doris White, Lenore Branson, and Jody Schroeder.  Among Charles's assets at his death were two investment accounts that he maintained with Repple, valued at over $3 million.  Repple served as the broker/dealer for the actual holder of these accounts, National Financial Services LLC ("NFS").  A couple of years before he died, Charles purportedly signed two separate beneficiary-designation agreements facilitated by Repple—a *Transfer on Death Registration and Beneficiary Designation Form* on March 27, 2019, and an *IRA Beneficiary and Successor Beneficiary Designation* on April 24, 2019.  These agreements designated Grace Community Church as the beneficiary of the two investment accounts.

{¶ 3}  Each of the agreements contained an indemnification provision in which Charles agreed to indemnify Repple and NFS from any liability related to the agreements. The provision in the March 2019 agreement provides:

> To My Broker/Dealer ("You"): * * * In consideration for establishing this registration and accepting the Beneficiary designation, I [Charles] (we) (including my (our) estate(s), heirs, spouse, successors in interest, and all beneficiaries

---

1. Defendant Grace Community Church is not a party to this appeal, so the trial court's decision insofar as it concerns the church is not a part of this appeal.  We will mention the church only when necessary for purposes of background or clarity.

named herein) shall indemnify and hold harmless You [Repple] and NFS (and affiliates, directors, officers, control persons, agents and employees thereof) from and against all claims, actions, costs and liabilities, including attorneys' fees by any person or entity arising out of or relating to this account registration and transfers hereunder.

{¶ 4} And the provision in the April 2019 agreement provides:

Indemnify and hold harmless your Broker/Dealer [Repple], NFS, FMTC, their officers, directors, employees, agents, affiliates, shareholders, successors, assigns and representatives, from any liability in connection with following the instructions on this form.

{¶ 5} Charles had also signed a Customer Agreement with Repple. It too contained an indemnification provision in which Charles agreed to indemnify Repple for certain losses:

You [Charles] agree to indemnify us [Repple] from, and hold us harmless for, any losses (as defined in Limits to our Responsibility) resulting from your actions or failures in providing accurate information, whether intentional or not, including losses resulting from actions taken by third parties. Beyond taking reasonable steps to verify the authenticity of instructions, we have no obligation to inquire into the purpose, wisdom, or propriety of any instruction we receive. This agreement is governed by a pre-dispute arbitration clause which appears on the last page of the Customer Agreement, and you acknowledge that you have received a copy by signing.

{¶ 6} The Customer Agreement also included a broad arbitration provision, in which Charles agreed to arbitrate any dispute that arises between himself, Repple, and NFS:

All controversies that may arise between you [Charles], us [Repple] and NFS concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction or the continuation performance, interpretation or breach of this or any other agreement between you, us and NFS, whether entered into or arising before, on or after the date this account is opened[)] shall be determined by arbitration in accordance

with the rules then prevailing of the Financial Industry Regulatory Authority [FINRA] or any United States security organization.

**{¶ 7}** On March 29, 2021, the Heirs filed a declaratory-judgment action naming as defendants Grace Community Church, Repple, Charles's estate, and ten John Does. The complaint alleged that the beneficiary-designation agreements are void because they are forgeries or because Charles was incompetent when he signed them. Additionally, the complaint alleged that the agreements were voidable as the products of undue influence (by the John Does). The Heirs sought declaratory judgment that the beneficiary-designation agreements are invalid and that the investment accounts are assets of Charles's estate. They also requested an injunction prohibiting Repple from transferring any funds from the accounts to anyone other than the Heirs or the Estate during the pendency of the action.

**{¶ 8}** Repple deliberately did not answer the Heirs' complaint or otherwise appear in the action. Consequently, on June 23, 2021, the trial court entered a default judgment against Repple. The court specifically stated that Repple would be "bound by any determination" made by the court on the Heirs' claims against Repple but that Repple would "not be heard" as part of the trial court's determination "of the merits of such claims." The trial court also issued an injunction detailing the manner in which Repple would hold and administer the accounts held in the name of Charles or his estate.

**{¶ 9}** On July 23, 2021, the Heirs served Repple with interrogatories and requests for production of documents. Repple did not respond, believing that it was not a party and had no obligation to respond to such discovery requests. Repple's attorney communicated this position to counsel for the Heirs. The Heirs would not accept this, so on September 20, 2021, they filed a motion to compel Repple to respond. A little over a

month later, on October 29, the trial court granted the motion to compel and ordered Repple to "obtain counsel to represent it for the purpose of responding to discovery requests in this action" and to "fully respond to such requests on or before December 6, 2021."

{¶ 10} On November 5, 2021, Repple's attorney filed a notice of appearance, marking the first time that Repple made an official appearance in the case. That same day, Repple filed a request that the trial court reconsider its discovery order, arguing that it was not a party and had no obligation to respond. Later that month, with the trial court's permission, Repple deposited the account funds with the court. On November 24, Repple filed a notice of appeal from the order compelling discovery.

{¶ 11} Early in the following month (December), the Estate and the church filed a joint motion to dismiss Repple's appeal, arguing that the discovery order was not final and appealable. Initially, we agreed and, in mid-December, dismissed Repple's appeal due to the lack of a final, appealable order. Repple subsequently filed an application for reconsideration, and on February 7, 2022, we granted the application and reinstated Repple's appeal regarding the order compelling discovery. In March, the trial court ordered a stay of proceedings in the case related to the discovery order, pending Repple's appeal.

{¶ 12} On January 28, 2022, approximately a week before we reinstated the appeal, the Estate filed a motion for leave to file cross-claims against Repple. Like the Heirs, the Estate alleged that the beneficiary-designation agreements were void due to either being forgeries or because Charles was incompetent when he signed them. Additionally, the Estate alleged that the agreements were voidable as a result of undue influence and coercion by the John Does, whom the Estate explicitly identified as

- 5 -

employees of Repple. Furthermore, the Estate alleged that Repple had breached its fiduciary duty to Charles. Finally, the Estate sought a declaration that it had no duty to indemnify Repple.[2]

{¶ 13} By this time, a case had already been opened in the probate court. On February 7, 2022, about a week after the Estate asserted the cross-claims, Repple submitted a creditor's claim to the Estate in the probate court, seeking indemnification related to the common-pleas-court case. The Estate rejected this claim nearly seven months later, on July 28. Its grounds for rejection were twofold: first, the claim was untimely under R.C. 2117.06, having been presented more than six months after Charles's death; second, the Estate considered the claim meritless since Repple had not engaged in any litigation against it.

{¶ 14} On September 26, 2022—two months after the Estate's rejection of the indemnification claim in the probate court—Repple brought the same claim before a Financial Industry Regulatory Authority ("FINRA") arbitration panel. In response, two months later, the Estate filed an answer in the arbitration proceedings, requesting that Repple's claim be dismissed. Additionally, the Estate filed a counterclaim seeking compensatory damages, punitive damages, attorney fees, and costs.

{¶ 15} On October 3, 2022, we upheld the trial court's discovery order. *Hogg v. Grace Community Church*, 12th Dist. Fayette No. CA2021-11-025, 2022-Ohio-3516. Repple's appeal did not pertain to the substantive merits of the Heirs' complaint or the allegations of fraud, forgery, or undue influence. Instead, Repple contended that it was not a party to the underlying action, so it was exempt from responding to the discovery

---

2. The Estate also asserted an action in discovery under R.C. 2317.48, that is, an action to obtain facts required for pleading, limited solely to interrogatories specifically concerning the facts necessary to the complaint or answer.

requests. We disagreed and concluded that Repple was indeed a party and that the trial court's decision to compel Repple's response to the Heirs' discovery requests was not erroneous.

{¶ 16} On December 14, 2022, the trial court reactivated the case. A few days later, on December 19, Repple filed a motion to stay and to compel arbitration. Repple noted that there had never been any claims pending between it and the Estate in the trial-court proceedings. Repple's argument rested on the arbitration provision in the Customer Agreement, to which the Estate was bound. The Estate, said Repple, had actively engaged in the ongoing arbitration proceedings, pursuing counterclaims against Repple. Repple further asserted that the arbitration proceeding would likely involve not only the Heirs but also the church. Given the Estate's counterclaims, Repple intended to include both parties into the arbitration. Repple noted that the church had expressed no opposition to a stay and was likely to participate in the arbitration to safeguard its rights. Repple contended that the Heirs, as beneficiaries of the Estate's decision to pursue claims against it through arbitration, should not be permitted to pursue a separate action in the trial court based on rights they claim through the Estate.

{¶ 17} On February 1, 2023, following a hearing, the trial court issued an order staying the proceedings and compelling arbitration. The court determined that Repple and Charles had "entered into a valid and enforceable arbitration agreement" that is binding on the Estate. Furthermore, the Estate's claims against Repple "are covered by the arbitration agreement and must be resolved by arbitration." The court found that Repple had not waived its right to arbitration and that the Estate's active participation in the arbitration proceedings undermined its arguments regarding waiver. Finally, the court clarified that "[a]ll other arguments raised by the Estate and Plaintiffs [the Heirs] in

opposition to Repple's Motion [to stay and compel arbitration] relate to the merits of the claims that Repple has asserted in the arbitration * * *." As such, the court concluded that the trial court was "not the proper place in which to address such matters." Consequently, the court ordered Repple, the church, and the Estate to engage in arbitration. Additionally, the court denied the Estate's January 2022 motion for leave to file cross-claims against Repple. Regarding the Heirs, the court found that Repple had not waived its right to arbitrate claims between them, but it chose not to compel the Heirs to arbitration.

{¶ 18} The Heirs and the Estate appealed, and Repple cross-appealed.

## II. Analysis

{¶ 19} The Heirs and the Estate assign three errors to the trial court's decision: they challenge the court's ruling regarding the arbitration of Repple's indemnification claim; they contest the court's finding that Repple has not waived its right to arbitration; and they question the court's decision to overrule the Estate's motion to file cross-claims. Repple presents a single cross-assignment of error, challenging the trial court's refusal to compel the Heirs to arbitration.

## A. The Statutory Framework and Standards of Review

{¶ 20} Arbitration is an encouraged method of alternative dispute resolution in which parties agree that a neutral third party, an arbitrator, will make binding decisions on disputed issues. In Ohio, R.C. Chapter 2711 provides the statutory framework for arbitration. R.C. 2711.02(B) directs a court to stay an action until arbitration occurs if the action involves an issue referable to arbitration under an arbitration agreement. But this requirement applies only if the moving party is not in default regarding proceeding with arbitration. *See Anglin v. Donohoo*, 12th Dist. Clermont No. CA2018-05-025, 2018-Ohio-

4484, ¶ 24. Furthermore, R.C. 2711.03(A) permits a court to compel parties to participate in arbitration. When there is doubt, the court should interpret the arbitration agreement in favor of allowing arbitration. *McKenzie v. Cintas Corp.*, 12th Dist. Warren No. CA2012-11-110, 2013-Ohio-1310, ¶ 10, citing *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 666 (1998).

{¶ 21} Appellate courts review a trial court's decision to grant a stay of proceedings pending arbitration under an abuse-of-discretion standard. But when it comes to interpreting the meaning and construction of contracts, the situation changes. This "involves a question of law which appellate courts review de novo." *Id.* at ¶ 11, citing *Northland Ins. Co. v. Palm Harbor Homes, Inc.*, 12th Dist. Clinton No. CA2006-07-021, 2007-Ohio-1655, ¶ 7. *See also Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 37. On the issue of arbitrability, the question of whether a specific claim is suitable for arbitration is also a matter of law that reviewing courts are tasked with determining. *Id.* A trial court's factual findings supporting a legal determination, though, "should be reviewed with great deference." *Taylor* at ¶ 38.

{¶ 22} Keeping the foregoing in mind, we turn now to the assignments of error.

**B. The Statute of Limitations Does Not Prevent Arbitration**

{¶ 23} The first assignment of error alleges:

> THE LOWER COURT ERRED IN COMPELLING ARBITRATION OF A BARRED CLAIM.

{¶ 24} The Heirs and the Estate do not here dispute that the Estate is bound by the arbitration agreement in the Customer Agreement. Furthermore, they acknowledge that the arbitration agreement covers the issue of indemnification. And there is no disagreement that, under the beneficiary-designation agreement, the Estate has a contractual duty to indemnify Repple. The sole point of contention appears to be whether

this duty has expired because the limitations period in R.C. 2117.06 for presenting creditors' claims to an estate has ended. The argument put forth by the Heirs and the Estate is that any claim for indemnification is barred by this statute of limitations. Consequently, an arbitrator lacks authority to decide whether the Estate must indemnify Repple.

{¶ 25} R.C. 2117.06 generally governs the presentment of creditors' claims in Ohio estates. According to this statute, "[a]ll creditors having claims against an estate" "must present their claims" in a specific manner, regardless of the nature of their claims (whether arising from contracts, torts, cognovit notes, or judgments) and regardless of "whether due or not due, secured or unsecured, liquidated or unliquidated." R.C. 2117.06(A). The term "creditor" is used "'in a generic sense,'" encompassing "'all persons having rights in action against the decedent.'" *Pierce v. Johnson*, 136 Ohio St. 95, 99 (1939), quoting *Favorite v. Booher's Administrator*, 17 Ohio St. 548, 553 (1867). Under the statute, if a claim against an estate already exists at the time of the decedent's death, it must be presented "within six months after the death of the decedent." R.C. 2117.06(B). Failure to present the claim within this limitations period results in it being "forever barred as to all parties." R.C. 2117.06(C).

{¶ 26} But if a claim does not exist at the time of death and the claim is contingent, a different limitations period comes into play. *See* R.C. 2117.06(H) ("Claims that are contingent need not be presented except as provided in sections 2117.37 to 2117.42 of the Revised Code"). The applicable limitations period is found in R.C. 2117.37. According to this statute, "[i]f a claim is contingent at the time of a decedent's death and a cause of action subsequently accrues on the claim," it must be presented to the executor or administrator either within "six months after the date of death of the decedent"

or within "two months after the cause of action accrues, whichever is later." In simpler terms, a contingent claim must be submitted to the estate within either six months following the death or two months after the legal basis for the claim arises, depending on which of these events occurs last.

{¶ 27} A claim, also known as a debt, is considered contingent if it hinges on an uncertain future event—one that may or may not happen. *See Havens v. Havens*, 12th Dist. Fayette No. CA2022-01-002, 2022-Ohio-3103, ¶ 22. Such a claim arises when a triggering event or condition precedent occurs. For instance, in cases involving garnishment, surety, or endorsement, the obligation to pay the debt does not arise until a specific triggering event like default occurs. *See LCNB Natl. Bank v. Connaughton*, 2012-Ohio-4101, 977 N.E.2d 134, ¶ 10 (12th Dist.); *In re Estate of Jarriett v. Parkview Fed. Sav. Bank*, 8th Dist. Cuyahoga No. 93289, 2010-Ohio-1434, ¶ 20. In essence, it is the element of dependency on an uncertainty that characterizes a contingent claim. This concept is relevant in the context of estates because a claim against an estate may not exist at the time of the decedent's death but may arise later when a specific event occurs—precisely the situation we encounter in this case.

{¶ 28} Repple's indemnification claim arises from the beneficiary-change agreements, making the claim contractual in nature. Initially, this claim was contingent because, at the time of Charles's death, Repple was uncertain whether indemnification would be necessary. It was not until November 5, 2021, when Repple first appeared in this action, that the indemnity provisions in the agreements were triggered. Consequently, that date marks the point at which Repple's cause of action for indemnification accrued. In its written notice to the Estate, Repple outlined the details of the claim:

> Repple's claim against the estate is for the estate to indemnify Repple against any claims by the parties therein, as well as any other claims that may be asserted against Repple related to the accounts. The estate's indemnification obligations include any attorneys' fees that Repple has incurred and will incur in the future related to the aforementioned lawsuit and claims, and any other claims asserted now or in the future against Repple related to the accounts. The amount of the claims is subject to determination as the lawsuit and claims progress and results are obtained.

While the total amount of Repple's claim remained known, this means merely that the claim was unliquidated. The precise sum that the Estate must pay to indemnify Repple would become clear once all the supporting litigation was concluded.

{¶ 29} As the indemnification claim was contingent, Repple had until January 5, 2022—two months from the accrual date—to present the claim to the Estate. *See* R.C. 2117.37. But Repple did not formally present the claim until February 7, 2022, when it was filed in the probate court. Consequently, the indemnification claim was presented outside the limitations period set by R.C. 2117.37.

{¶ 30} R.C. 2117.37 does not state that a contingent claim is "forever barred" if not presented within the limitations period. *Compare* R.C. 2117.06(C) (stating that "a [non-contingent] claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties"). Instead, after stating the limitations period, it provides that the executor or administrator of the estate must either allow or reject the claim. If allowed, the claim must be paid. If rejected, the claimant has two months to bring an action on the claim or be "forever barred from maintaining an action on the claim." R.C. 2117.37. Here, the Estate rejected Repple's claim as untimely under R.C. 2117.06, since it was presented more than six months after Charles's death, and deemed it meritless because Repple had not engaged in litigation against the Estate. Repple filed its indemnification claim in arbitration within two months following the rejection.

**{¶ 31}** The Heirs and the Estate argue that the statute of limitations (either one) precludes arbitration of Repple's indemnification claim for two reasons. They contend that Ohio law requires an arbitrator to observe any applicable statute of limitation, citing in support *Port Clinton v. Scagnetti Construction Co.*, 6th Dist. Ottawa No. OT-88-47, 1990 Ohio App. LEXIS 34 (Jan. 12, 1990). But in *Scagnetti* the arbitration agreement explicitly incorporated the statute of limitations. It was this incorporation, rather than the statute itself, that led the court to conclude the arbitrators had exceeded their powers and authority under the arbitration agreement. *See* R.C. 2711.10(D) (court must vacate an arbitration award if "[t]he arbitrators exceeded their powers"). As the arbitration agreement here omits any mention of statutes of limitation, *Scagnetti* is inapplicable.

**{¶ 32}** The other reason that the Heirs and the Estate give for why Repple's indemnification claim is precluded from arbitration is the FINRA arbitration rules. They contend that FINRA Rules 12206(a) and (c) operate to bind the arbitrator to any applicable statute of limitations. Rule 12206(a) imposes a six-year limit on the eligibility of claims for arbitration: "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." And Rule 12206(c) pertinently provides that "[t]he rule [in division (a)] does not extend applicable statutes of limitations." Thus, FINRA's six-year limitations rule is subordinate to any shorter statutory limitation period.

**{¶ 33}** Despite this, 12206(a) also clarifies that "[t]he [arbitration] panel will resolve any questions regarding the eligibility of a claim under this rule." And Rule 12409 grants the panel "the authority to interpret and determine the applicability of all provisions under the Code." This means that, under FINRA's rules, an arbitrator has the authority to review claims potentially barred by a statute of limitations to determine whether jurisdiction over

a claim exists. Furthermore, it means that a FINRA arbitrator does not exceed its authority under R.C. 2711.10 by exercising jurisdiction over a claim, like Repple's indemnification claim, that may be barred by a statute of limitations. *See Buck v. Compton*, Case No. 2:22-mc-00017-JTF-tmp, 2023 U.S. Dist. LEXIS 61284, at *10-11 (W.D.Tenn.2023) (concluding that FINRA arbitration panel did not exceed its authority under 9 U.S.C. 10 [analogous to R.C. 2711.10]).

**{¶ 34}** Although Repple filed its indemnification claim after the limitations period outlined in R.C. 2117.37 or 2117.06 had ended,[3] the Heirs and the Estate fail to convince us that this fact categorically precludes arbitration of the claim as a matter of law. The arbitration agreement does not link arbitrability to compliance with a statute of limitations. In addition, the FINRA arbitration rules authorize an arbitrator to determine its own jurisdiction over claims. Moreover, the Estate's voluntary participation in the arbitration proceedings, including submitting a counterclaim, implies consent to arbitration proceedings and recognition of the arbitrator's authority. Therefore, the Estate cannot now deny the arbitrator's authority or jurisdiction over the dispute. *See Creatore v. Baird*, 154 Ohio App.3d 316, 2003-Ohio-5009, ¶ 9-13 (7th Dist.).

**{¶ 35}** In light of all the circumstances, we see no error in the trial court's decision to stay the action pending the already-underway arbitration of Repple's claim for indemnification.

**{¶ 36}** The first assignment of error is overruled.

## C. The Trial Court Reasonably Found that Repple Had Not Waived Arbitration

---

3. The Estate partially rejected Repple's indemnification claim, citing untimeliness under the non-contingent-claim statute of limitations in R.C. 2117.06. Both the Heirs and the Estate opposed Repple's motion to stay and compel arbitration, partly invoking this statute of limitations. We note that for the first time on appeal they are arguing against arbitration using the contingent-claim statute of limitations in R.C. 2117.37.

**{¶ 37}** The second assignment of error alleges:

THE LOWER COURT ERRED IN DETERMINING THAT REPPLE DID NOT WAIVE ITS RIGHT TO ARBITRATE.

**{¶ 38}** In their second assignment of error, the Heirs and the Estate argue that Repple waived its right to arbitration by refusing to participate in discovery, among other conduct that they claim was inconsistent with arbitration.

**{¶ 39}** R.C. 2711.02 states that a stay pending arbitration must be denied if the party applying for the stay is "in default in proceeding with arbitration." R.C. 2711.02(B). A party is considered "in default" when it waives its right to arbitration. *See 84 Lumber Co. v. O.C.H. Constr., LLC*, 7th Dist. Mahoning No. 14 MA 152, 2015-Ohio-4149, ¶ 16 ("A party who waives their right to arbitrate is 'in default in proceeding with arbitration'"). Just like any other contractual right, the right to arbitration can be waived, and it can be waived implicitly. *Dixon v. Residential Fin. Corp.*, 12th Dist. Madison No. CA2009-11-024, 2010-Ohio-4409, ¶ 11. To establish waiver, it must be show that the party knew it had an existing right to arbitration and acted in a manner inconsistent with that right, considering all the circumstances. *Patrick v. Dixie Imps., Inc.*, 12th Dist. Butler No. CA2017-05-063, 2017-Ohio-9093, ¶ 22. There is no single formula to determine implicit waiver, and no single factor can be given overriding importance. *Georgetowne Condominium Owners Assn. v. Georgetowne Ltd. Partnership & Homes by Calkins, Inc.*, 12th Dist. Warren No. CA2002-02-010, 2002-Ohio-6683, ¶ 12 ("There are no talismanic formulas for determining the existence of an implicit waiver, and no one factor can be isolated or singled out to achieve controlling weight"). Instead, on a case-by-case basis, a court must review all the relevant facts and circumstances to assess the extent of the party's involvement in the litigation and decide whether the party should be prevented from asserting its right to arbitration. *Oney v. Dixie Imports, Inc.*, 12th Dist. Butler No.

CA2017-06-077, 2018-Ohio-913, ¶ 13.

{¶ 40} When deciding whether a party has acted inconsistently with its right to arbitration, a court must consider several factors. These factors include (1) any delays in the demand for arbitration; (2) the extent of the requesting party's involvement in the litigation before filing its motion to stay the judicial proceeding (including the status of discovery, dispositive motions, and the trial date); (3) whether the requesting party invoked the court's jurisdiction by filing a counterclaim or third-party claim without seeking a stay of proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent actions. *Id.* at ¶ 14. There is, however, no established timeframe within which a party must file a motion to stay pending arbitration. *McGuffrey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 51 (12th Dist.2001).

{¶ 41} The determination of whether a party has waived the right to arbitrate is plainly dictated by the facts. *Becker Co. v. Jedson Eng., Inc.*, 2d Dist. Montgomery No. 27891, 2018-Ohio-3924, ¶ 11. Therefore, a trial court's decision on waiver is reviewed "under an abuse-of-discretion standard." *Oney* at ¶ 15.

{¶ 42} It is undisputed that Repple was aware of its right to arbitration. The question here is whether Repple's actions were inconsistent with that right and constituted a waiver. The trial court determined that Repple had not waived its right to seek arbitration to resolve its disputes with the Estate. Additionally, the Estate's own ongoing participation in the arbitration proceedings already underway undermined its argument for waiver. As for the disputes raised in the Heirs' claims, although the court denied Repple's request to compel the Heirs to arbitration, it determined that Repple had not waived its right to arbitration for these disputes. The court found that Repple had contested its status as a party, had not litigated the merits of any dispute, and had not taken any actions that would

waive its right to arbitration. We think that the trial court's conclusion is reasonable.

**{¶ 43}** As an initial matter, two factors hold little weight. Repple never invoked the jurisdiction of the common pleas court by filing a counterclaim or third-party claim against any of the parties in this action. And the only apparent prejudice suffered by the Heirs and the Estate from Repple's alleged inconsistent actions is a delay in adjudicating their claims, along with some associated expenses.

**{¶ 44}** The more significant factor here is Repple's participation in the litigation. "'Mere "participation" in a lawsuit is probably not enough to support a finding of waiver.'" *Griffith v. Linton*, 130 Ohio App.3d 746, 752 (10th Dist. 1998), quoting *Hercules & Co., Ltd. v. Beltway Carpet Service, Inc.*, 592 A.2d 1069, 1075 (D.C.App. 1991). Similarly, merely "engaging in discovery will not necessarily result in waiver of arbitration rights." *Id.* at 753, citing *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1442 (N.D.Ill.1993). Waiver is more commonly found in cases "where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975). Typically, "'active participation in a lawsuit * * * evincing an acquiescence to proceeding in a judicial rather than arbitration forum'" is needed to establish waiver. *Griffith* at 752, quoting *Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik Gmbh*, 832 F. Supp. 1293, 1295 (E.D.Wis.1993). Repple's participation in this litigation does not fit this description.

**{¶ 45}** Repple intentionally chose not to participate in this litigation at all, even to the extent of allowing a default judgment. It did not conduct depositions, make discovery requests, engage in discovery, or push this dispute towards trial in any manner. Repple has never been involved in litigating the merits of any claims. Repple's appeal was

- 17 -

pursued precisely because it believed it was not a necessary party to the litigation. Essentially, Repple's involvement has focused not on the merits of any claim, but rather on whether Repple was a proper party and subject to the discovery process. None of Repple's actions suggested a desire to litigate any disputes in the trial court.

{¶ 46} While the Heirs and the Estate contend that Repple's delay in seeking arbitration was unreasonable, we think that the matter is less clear-cut. The arbitration agreement pertains solely to disputes between Repple and the Estate. There was no clear dispute between them until January 28, 2022, when the Estate sought leave to file cross-claims against Repple. But shortly after, the trial court stayed the proceedings pending Repple's appeal. During this stay, the Estate rejected Repple's indemnification claim filed in the probate court. Two months later, at the end of September, Repple initiated arbitration of the claim. It was not until the beginning of October, when we issued our decision in *Hogg I*, that it was determined that Repple was a party in the trial court action. In November, the Estate filed an answer and counterclaim against Repple in the arbitration proceedings. Then, in mid-December, the trial court reactivated the case. It was only a few days after this reactivation that Repple filed its motion to stay the court proceedings and compel arbitration of the disputes.

{¶ 47} In sum, Repple could not have pursued arbitration for its indemnification claim when it initially appeared in the trial court action on November 5, 2021, as there was no genuine dispute with the Estate at that time. Arguably, until the Estate formally rejected the claim in the probate court at the end of July 2022, there was no need for Repple to seek arbitration, as there was still a possibility that the Estate would settle the claim without further litigation. If the claim had been allowed, the matter would have been resolved. As it is, when the Estate rejected the claim, Repple's only recourse was some

form of litigation to resolve the dispute, and it opted for arbitration.

**{¶ 48}** The Heirs and the Estate say that Repple's motive for seeking arbitration was to avoid providing them with information during discovery. While they may be correct, it is not within our purview to speculate on the nature of Repple's motivation. The trial court was not obligated to attribute an ill motive to Repple.

**{¶ 49}** The waiver determination was within the sound discretion of the trial court—a decision not to be disturbed unless there was no reasonable basis for it. Considering the relevant factors and the procedural context, we think that the trial court could have reasonably concluded that Repple had not acted inconsistently with its right to arbitration and therefore had not waived that right.

**{¶ 50}** The second assignment of error is overruled.

### D. The Estate's Cross-Claims are Referrable to Arbitration

**{¶ 51}** The third assignment of error alleges:

> THE LOWER COURT ERRED BY ABDICATING ITS RESPONSIBILITY TO RULE ON THE SCHROEDER ESTATE'S MOTION FOR LEAVE TO AMEND ON ITS MERITS TO THE WAIVED ARBITRATION PANEL.

**{¶ 52}** In the third assignment of error, the Estate argues that the trial court erred by referring the cross-claims it sought to assert against Repple to arbitration. The Estate contends that Repple had waived its right to arbitration and that an arbitrator lacks jurisdiction to settle the disputes in the cross-claims.

**{¶ 53}** We have concluded that the trial court did not err by determining that Repple retained its right to arbitration. As for the arbitrator's jurisdiction, the Estate does not provide a clear explanation for why jurisdiction is lacking, stating only that "the Common Pleas Court improperly assumed with no factual basis or logic that the FINRA arbitration had jurisdiction to hear the crossclaim."

- 19 -

{¶ 54} Based on our discussion in the first assignment of error regarding the FINRA rules, we are not convinced that the arbitrator lacks jurisdiction. In any event, it is an issue that the arbitrator may decide. The trial court did not err in referring the cross-claim disputes to arbitration.

{¶ 55} The third assignment of error is overruled.

### E. The Heirs Cannot be Compelled to Arbitration

{¶ 56} Repple's cross-assignment of error alleges:

> THE TRIAL COURT ERRED IN FAILING TO COMPEL PLAINTIFFS TO FINRA ARBITRATION WITH THE ESTATE AND REPPLE, AS THE PLAINTIFFS' ONLY CLAIM TO RELIEF IS BASED ON THE RELATIONSHIP BETWEEN DECEDENT AND REPPLE AND THEY STAND IN THE SHOES OF DECEDENT.

{¶ 57} In its cross-assignment of error, Repple argues that the trial court erred by not compelling the Heirs to arbitration. Repple contends that the Heirs stand in Charles's shoes and their interests in the litigation will be determined by the claims that the Estate has already asserted in arbitration.

{¶ 58} In general, a court cannot compel a party to arbitrate a dispute unless it has agreed in writing to do so. Arbitration is contract-based, and parties cannot be forced into arbitration for disputes they have not agreed to resolve in that manner. *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, ¶ 8 (quoting the same). But courts, including Ohio, have recognized exceptions to this rule. *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, ¶ 24 ("federal and state courts have recognized exceptions to the rule that a person cannot be compelled to arbitrate a dispute which he did not agree to submit to

arbitration"). These exceptions stem from five theories rooted in common law principles of contract and agency law, through which a non-signatory can be bound to an arbitration agreement: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. American Arbitration Assn.*, 64 F.3d 773, 776 (2d Cir.1995). *See also I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3631, ¶ 12 (8th Dist.) (quoting the same).

{¶ 59} The Heirs did not agree to arbitrate any of the disputes in this case. The arbitration agreement is between Charles and Repple and broadly provides that any dispute arising between them would be resolved through arbitration. None of the Heirs is a signatory to that agreement. Repple, though, suggests that the agency and estoppel exceptions apply to bind the Heirs.

{¶ 60} "Traditional principles of agency law may bind a nonsignatory to an arbitration agreement." *Thomson-CSF* at 777. Agency involves a consensual fiduciary relationship where "an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal." *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608 (1992). Actual authority is defined based on the principal's intent and the agent's understanding. *Cincinnati Golf Mgt., Inc. v. Testa*, 132 Ohio St.3d 299, 2012-Ohio-2846, ¶ 24. Express authority is directly granted to the agent by the principal, extending only to the specific powers given in express terms. *Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991). In the absence of express agency, relationships may involve implied or apparent agency. Implied authority arises from the principal's express delegation of actual authority, and unless expressly limited, encompasses actions necessary for the agent to fulfill the expressly conferred powers. *Damon's* at 608. Apparent agency arises when someone acting as an agent lacks actual

authority but leads another party to believe they have the necessary authority to make a contract. *Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, ¶ 13. In this context, the agent's authority is determined by the principal's actions, not the agent's own conduct. *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, ¶ 41. The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority, not when the agent's own conduct creates it. *Id.*

{¶ 61} Repple contends that the agency exception dictates that a decedent's arbitration agreement binds his beneficiaries regarding the decedent's claims. But this is incorrect. The case that Repple cites in support of its contention, *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, ¶ 19, says nothing about the agency exception and, in any event, is factually distinguishable from the present case. In *Peters*, the arbitration agreement itself explicitly bound the decedent's heirs, which is not the case with the arbitration agreement here.

{¶ 62} There was no principal-agent relationship between Charles, now represented by the Estate (the principal-signatory), and the Heirs (the agents-nonsignatories). There is no evidence indicating that Charles or the Estate expressly or apparently granted any authority to the Heirs. Therefore, the Heirs could not be bound to arbitration under an agency theory.

{¶ 63} The other exception that Repple suggests binds the Heirs is estoppel. Estoppel theory posits that a nonsignatory who knowingly accepts benefits from an agreement cannot later deny a corresponding obligation to arbitrate. *I Sports*, 2004-Ohio-3631 at ¶ 13, citing *Thomson-CSF*, 64 F.3d 773 at 778. To be bound, the party must directly benefit from the agreement; "[a]n indirect benefit is not enough." *Id.*, citing

*Thomson-CSF* at 779. *See also Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir.2003). A direct benefit flows directly from the agreement, while an indirect benefit arises from exploiting the contractual relation of parties to the agreement but not the agreement itself. *Ribadeneira v. New Balance Ath., Inc.*, 65 F.4th 1, 21 (1st Cir.2023). Equitable estoppel prevents nonsignatories from opportunistically adopting inconsistent stances. If a party consistently seeks enforcement of other provisions in the same contract, it should be bound to all provisions. In sum, a nonsignatory may be bound to an arbitration agreement under estoppel when seeking direct benefits from the contract while disavowing the arbitration provision.

**{¶ 64}** According to Repple, the interest that the Heirs seek to gain stems from Charles's relationship with it. Repple contends that the Heirs cannot simultaneously seek the benefits of that relationship while avoiding the burdens of it, namely arbitration. In support of this contention, Repple cites *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581. But the Heirs are not seeking the benefits of a contract that Charles had with Repple while attempting to avoid the burdens of that contract—the type of case that *Gerig* concerns. Estoppel applies to bind the Heirs to the arbitration agreement only if the Heirs are seeking to benefit directly from the Customer Agreement or the beneficiary-designation agreements. The Heirs are seeking to benefit only indirectly from the beneficiary-designation agreements by attempting to have them declared invalid and void, which would entitle them to the money under the intestacy statutes. The Heirs have neither sought to enforce any provision of the agreements nor directly benefited from them. Therefore, they cannot be compelled to arbitration under an estoppel theory.

**{¶ 65}** Nor does Repple's third contention, that the Heirs "stand in the shoes" of Charles, have any merit. Under the law, it is not the Heirs that stand in Charles's shoes,

but the Estate.

**{¶ 66}** This brings us to the real problem here, which Repple hints at in its argument but does not mention explicitly. Repple states that the cause of action here belongs not to the Heirs but to the Estate. In other words, the Heirs do not have standing to bring their claims. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 23 ("A determination of standing necessarily looks to the rights of the individual parties to bring the action, as they must assert a personal stake in the outcome of the action in order to establish standing"), citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27. Repple has a point. The Heirs do not hold an interest in the accounts, as nothing has descended or been distributed to them yet under the descent-and-distribution statute. It is the Estate, as the party succeeding to Charles's rights, that has standing to bring the claims.

**{¶ 67}** But Repple did not challenge the Heirs' standing in the trial court proceedings and does not really dispute it here on appeal. A lack of standing renders a judgment only voidable, not void. *See Bank of New York Mellon v. Kurzner*, 12th Dist. Butler No. CA2014-04-096, 2015-Ohio-2008, ¶ 8, citing *Kuchta* at ¶ 19. A party's lack of standing can be challenged in the trial court proceedings or on direct appeal, but "standing cannot be used to collaterally attack the judgment." *Kurzner* at ¶ 8 (stating that "while a party's lack of standing can be challenged in the course of the foreclosure proceedings themselves or on direct appeal of the judgment, standing cannot be used to collaterally attack the judgment"), citing *Kuchta* at ¶ 23-25. Because Repple has not raised the issue of the Heirs' lack of standing, we are compelled to disregard it. If the Heirs continue to assert their claims in the trial court after arbitration, Repple can likely challenge their standing at that time. *See Church at Warren v. Warzala*, 11th Dist. Trumbull No. 2016-

T-0073, 2017-Ohio-6947, ¶ 17 ("A lack of standing defense may be raised at any time during the proceedings, but it does not affect the subject-matter jurisdiction of a court nor can it be used to collaterally attack a judgment"), citing *Kuchta* at paragraphs two and three of the syllabus.

{¶ 68} As the Heirs did not agree to arbitration, and none of the exceptions apply that would compel them to do so, we conclude that the trial court did not err in overruling Repple's motion to compel the Heirs to arbitration.

{¶ 69} The cross-assignment of error is overruled.

### III. Conclusion

{¶ 70} We have overruled all the assignments of error as well as the cross-assignment of error. Accordingly, the trial court's order is affirmed.

S. POWELL, P.J. and M. POWELL, J., concur.